RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0177p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

EUGENE STANSBERRY; MARCIA R. MEOLI,
Bankruptcy Trustee of the Estate of Eugene
and Deborah Stansberry,
                      *Plaintiffs-Appellants,*

          *v.*

AIR WISCONSIN AIRLINES CORPORATION,
                      *Defendant-Appellee.*

No. 09-2499

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 08-00158—Robert J. Jonker, District Judge.

Argued: June 1, 2011

Decided and Filed: July 6, 2011

Before: MARTIN, NORRIS, and SILER, Circuit Judges.

_____

## COUNSEL

**ARGUED:** William F. Piper, II, WILLIAM F. PIPER, PLC, Portage, Michigan, for Appellants. Chad A. Shultz, FORD & HARRISON LLP, Atlanta, Georgia, for Appellee. **ON BRIEF:** William F. Piper, II, WILLIAM F. PIPER, PLC, Portage, Michigan, for Appellants. Chad A. Shultz, Raanon Gal, FORD & HARRISON LLP, Atlanta, Georgia, for Appellee.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge. After being fired, Eugene Stansberry sued his former employer, Air Wisconsin Airlines, alleging "association discrimination" under the Americans with Disabilities Act. While Stansberry is not disabled, his wife suffers from Polyarteritis Nodosa, a rare and debilitating autoimmune disorder.

Stansberry asserts that Air Wisconsin terminated him because of unfounded fears that he would be distracted at work on account of his wife's disability. The district court, however, granted summary judgment in favor of Air Wisconsin concluding that Stansberry did not establish a prima facie case of discrimination and, alternatively, that Air Wisconsin had legitimate, nondiscriminatory reasons for discharging him. We **AFFIRM** the grant of summary judgment.

**I.**

Stansberry managed Air Wisconsin's operations at Kalamazoo Airport from 1999 until he was fired on July 26, 2007. Air Wisconsin is a regional passenger airline that operates flights for larger carriers including US Airways Express, Northwest Airlines, and United Express.

In the mid-1990s Stansberry's wife developed Polyarteritis Nodosa, a very rare and debilitating autoimmune disorder. The disease caused her tumors, lesions, swelling, a stroke, severe pain, dizziness, numbness and weakness, and vision problems. Air Wisconsin's group medical plan covered both Stansberry and his wife before he was terminated. Initially, the plan covered an expensive course of prescription Remicade infusions for Stansberry's wife. The Remicade treatments cost the insurer about $4,000 every six weeks, but dramatically improved her condition.

Stansberry's wife's condition began to worsen in March 2007 and her physicians recommended that she resume Remicade treatments. However, Remicade was not technically approved for fighting her disorder, and Air Wisconsin's health plan administrator notified Stansberry in May that it would no longer cover the Remicade treatments. Stansberry spoke to various people at Air Wisconsin and its plan administrator to no avail. On July 10 the plan administrator denied Stansberry's appeal of the initial decision that the Remicade treatments were not covered. But, because of the confusion and delay, the administrator agreed to cover the Remicade treatments through July.

Around this time Air Wisconsin dramatically increased its operations in Kalamazoo, growing from eleven employees to twenty-five. Stansberry did not train the new employees but, as Air Wisconsin's highest ranking manager in Kalamazoo, he was responsible for ensuring that they properly carried out their jobs. Unfortunately, the new hires proved problematic. Between February and May six different employees received a total of nine security violation letters from the Kalamazoo airport director. Stansberry did not notify Air Wisconsin's corporate headquarters about the violations, and in June the Transportation Security Administration sent a letter of investigation to Air Wisconsin's headquarters. Marvin Mulder, Air Wisconsin's regional manager and Stansberry's supervisor, eventually received this notice and was particularly troubled that Stansberry had not informed him of the violations earlier.

When asked why he had not reported the violations to headquarters, Stansberry stated that he was unaware he needed to do so. Mulder explained that Air Wisconsin's policy had always been that security violations must be reported to the corporate offices. Stansberry disagreed and suggested that Air Wisconsin send a memorandum to station managers clarifying this policy in order to ensure proper reporting in the future. Shortly thereafter Air Wisconsin did circulate a memorandum reminding employees of the policy.

Even prior to this incident, Mulder and Stansberry had a strained relationship. Beginning in March 2007 Stansberry sent several emails to Mulder expressing his displeasure with Mulder's management style and stating that he was thinking about quitting. In June, Stansberry sent Mulder a particularly candid e-mail in which he wrote, "I just can't do this job knowing that I am failing at my job. I have too much pride."

Mulder reviewed the security violations with Air Wisconsin's vice president of customer relations and the two notified the Transportation Security Administration that they would take "severe disciplinary action" against Stansberry.

On July 26 Mulder went to Kalamazoo to meet with Stansberry. The parties dispute what was said during the meeting, but it ended with Mulder firing Stansberry. Air Wisconsin asserts that it terminated Stansberry for poor performance based on his

failure to stay within budget, failure to report security violations, and improper supervision of employees, which led to the security violations in the first place. Although Mulder stated that he had not, prior to this meeting, decided whether to fire Stansberry, he had brought with him a prepared termination letter. Mulder gave Stansberry this letter, which referenced only the security violations as the grounds for his termination.

Stansberry filed a charge of discrimination with the Equal Employment Opportunity Commission and the Michigan Department of Civil Rights on August 22. Stansberry eventually withdrew his claim with the Michigan Department of Civil Rights and received a right to sue letter from the Equal Employment Opportunity Commission.

After Stansberry received his right to sue letter, but before he filed a lawsuit against Air Wisconsin, he and his wife filed a bankruptcy petition under Chapter 7. Stansberry did not disclose that he had received a right to sue letter or that he intended to file a lawsuit against Air Wisconsin. Stansberry asserts that he told Marcia Meoli, the trustee in bankruptcy, that he had been fired and was considering filing a lawsuit against Air Wisconsin but that Meoli did not believe he had much of a case. After Stansberry filed this lawsuit, in October 2008, Air Wisconsin contacted Meoli to inform her of Stansberry's claim. Meoli successfully reopened the bankruptcy proceedings and joined the lawsuit.

In an oral decision issued after argument on Air Wisconsin's summary judgment motion, the district court held that Stansberry is not judicially estopped from pursuing the claim based on his failure to disclose it to the bankruptcy court. However, the district court granted summary judgment for Air Wisconsin on Stansberry's associational discrimination claim, finding that Stansberry did not establish a prima facie case of discrimination. Alternatively, the district court also found that Stansberry's poor performance was a legitimate reason for his termination and he had not shown that it was pretextual. Additionally, the district court granted summary judgment for Air Wisconsin on Stansberry's retaliation claim. Stansberry appeals the district court's decision granting Air Wisconsin summary judgment on his associational discrimination claim.

## II.

We review the district court's grant of summary judgment de novo. *Bentkowski v. Scene Magazine*, 637 F.3d 689, 693 (6th Cir. 2011). Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show "that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists," and the court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001). When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Stansberry claims that Air Wisconsin discharged him because of his wife's disability, in violation of the Americans with Disabilities Act. His claim arises under section 12112(b)(4) of the Act, which prohibits "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4) (2006). For the purpose of resolving this appeal we assume that Stansberry's wife is a qualified individual with a disability as defined by the Act.

Stansberry's claim arises under an infrequently litigated section of the Act, which this Court has never addressed in a published opinion. The legislative history accompanying this section, H.R. Rep. No. 101-485, pt. 2, at 61-62 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 343-44, explains the type of conduct that is prohibited.

> [A]ssume, for example that an applicant applies for a job and discloses to the employer that his or her spouse has a disability. The employer believes the applicant is qualified for the job. The employer, however, assuming without foundation that the applicant will have to miss work or frequently leave work early or both, in order to care for his or her spouse,

declines to hire the individual for such reasons.  Such a refusal is prohibited by this subparagraph.

In contrast, assume that the employer hires the applicant.  If he or she violates a neutral employer policy concerning attendance or tardiness, he or she may be dismissed even if the reason for the absence or tardiness is to care for the spouse.  The employer need not provide any accommodation to the nondisabled employee.  The individuals covered under this section are any individuals who are discriminated against because of their known association with an individual with a disability.

Importantly, employers are not required to provide reasonable accommodations to non-disabled workers under this section of the Act.  *See* 29 C.F.R. § 1630.8 App. at 379 (2007); *Larimer v. Int'l Bus. Machs. Corp.*, 370 F.3d 698, 700 (7th Cir. 2004); *Den Hartog v. Wasatch Acad.*, 129 F.3d 1076, 1084 (10th Cir. 1997).

Several circuits, including this Court in an unpublished opinion, have relied on *Larimer*'s outline of three theories into which "association discrimination" plaintiffs generally fall: (1) "expense"; (2) "disability by association"; and (3) "distraction."  The "expense" theory covers situations where an employee suffers an adverse employment action because of his or her association with a disabled individual covered under the employer's health plan, which is costly to the employer.  The "disability by association" theory encompasses two related situations.  Either the employer fears that the employee may contract the disability of the person he or she is associated with (for example the employee's partner is infected with HIV and the employer fears the employee may become infected), or the employee is genetically predisposed to develop a disability that his or her relatives have.  The "distraction" theory is based on the employee's being somewhat inattentive at work because of the disability of someone with whom he or she is associated.  *Id.* at 700.  In this case, Stansberry abandoned an "expense" theory and acknowledged that his claim does not fit within the "disability by association" theory as his wife's condition is not communicable.  Therefore, he relies only on a "distraction" theory.

Stansberry does not offer any direct evidence of discrimination, and his claim must therefore be analyzed through a *McDonnell Douglas*-like burden-shifting test.[1] The Tenth Circuit first adapted the *McDonnell Douglas* test to associational discrimination claims and held that a plaintiff can make out a claim under section 12112(b)(4) by showing that: (1) he or she was qualified for the position; (2) he or she was subject to an adverse employment action; (3) he or she was known to have a relative with a disability; and (4) the adverse employment action occurred under a circumstance that raises a reasonable inference that the disability of the relative was a determining factor in the decision. *Den Hartog*, 129 F.3d at 1085. Most circuits considering claims under this section, including this Court in an unpublished opinion, have since adopted this framework. *See Overley v. Covenant Transp., Inc.*, 178 F. App'x 488, 493-94 (6th Cir. 2006); *Larimer*, 370 F.3d at 701-02 (tweaking the fourth prong to require that plaintiff show that his or her case falls into one of the three types of associations protected by this section). Because the three theories articulated in *Larimer* are not necessarily an exhaustive list, we adopt the *Den Hartog* formulation of the *McDonnell Douglas* framework and require that individuals establish the following four elements in order to establish a prima facie case of associational discrimination: (1) the employee was qualified for the position; (2) the employee was subject to an adverse employment action; (3) the employee was known to be associated with a disabled individual; and (4) the adverse employment action occurred under circumstances that raise a reasonable inference that the disability of the relative was a determining factor in the decision.

Under this framework, Stansberry easily satisfies the second and third prongs: Stansberry's termination is an adverse action and, assuming that his wife's condition renders her disabled, Air Wisconsin was aware of her disease. However, Stansberry's claim falls short on the fourth prong. The record is replete with evidence that Stansberry was not performing his job to Air Wisconsin's satisfaction and devoid of evidence to

---

[1]Stansberry suggests that there is direct evidence of discrimination because Air Wisconsin, and specifically Mulder, lied about the reason for terminating him and fired him shortly after he complained about his wife's medical treatment not being covered. However, this is not "direct evidence" of discrimination because it requires an inference to reach the conclusion that the action was driven by improper motives. *See, e.g.*, *Spengler v. Worthington Cyclinders*, 615 F.3d 481, 491 (6th Cir. 2010).

suggest that his discharge was based on any unfounded fears that his wife's illness might cause him to be inattentive or distracted in the future.

Stansberry argues that we may infer that he was terminated on account of his wife's disability because he was discharged shortly after her condition worsened. However, although her condition grew worse immediately before Stansberry was terminated, Air Wisconsin had been aware of her illness for many years. Because Air Wisconsin knew of her disability for a long period of time, this undercuts the inference that Stansberry's termination was based on unfounded fears that his wife's disability might cause him to be inattentive at work. *Cf., e.g.*, *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 511 (3d Cir. 2009) (finding no evidence of discrimination in part because the employer was aware of the plaintiff's child's disability for many years before firing the plaintiff).

Additionally, far from unfounded fears that Stansberry might be distracted, the record contains extensive evidence that Stansberry was not performing his job to Air Wisconsin's satisfaction. In particular, several of the employees Stansberry was responsible for supervising received security violations, Stansberry did not report the security violations to Air Wisconsin's headquarters, and Stansberry did not keep the Kalamazoo operations within budget. Stansberry even acknowledged in several e-mails that he was not performing his job adequately and stated that he was considering quitting. Stansberry disputes Mulder's characterization of their meeting, but offers nothing to show that his termination was related to his wife's illness instead of his perceived unsatisfactory performance. Stansberry appears to have been well-liked and respected by his employees, who signed a petition to have him rehired, and he generally received positive performance reviews during his long tenure with Air Wisconsin. However, his performance grew remarkably worse in the time leading up to his termination. Therefore, Stansberry has not come forward with enough evidence to establish a prima facie case of discrimination.

Alternatively, even if Stansberry had established a prima facie case, his poor performance is a legitimate non-discriminatory reason for Air Wisconsin to terminate him. And, Stansberry has offered nothing to show that this reason was pretextual.

Stansberry argues that we may infer that he was discharged on account of his wife's illness because Mulder lied about his conversation with Stansberry and the reason for terminating him. Generally, if an employer proffers a false explanation for discharging an employee, that will be enough to show that it is pretextual. *See, e.g.*, *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000). However, even if Mulder had lied, Stansberry's argument improperly conflates the prima facie case and pretext inquiries under *McDonnell Douglas*. A plaintiff cannot bypass the prima facie showing requirement and must offer some evidence to suggest that the adverse employment action he or she suffered was due in some measure to discriminatory animus before the employer is required to articulate a non-discriminatory reason for the action. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-48 (2000) (explaining that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated"). Therefore, even if Mulder had lied about the reason for terminating Stansberry, that does not show that Air Wisconsin terminated Stansberry on account of his wife's disability because Stansberry has offered no evidence to create an inference that he was fired on account of his wife's disability.

Importantly, while Stansberry's poor performance at work was likely due to his wife's illness, that is irrelevant under this provision of the Act. Stansberry was not entitled to a reasonable accommodation on account of his wife's disability. *Cf., e.g.*, *Larimer*, 370 F.3d at 700. Therefore, because his discharge was based on actually performing his job unsatisfactorily, and not fears that his wife's disability might prevent him from performing adequately, Air Wisconsin's conduct is not prohibited by this section of the Act. While Stansberry's situation is very unfortunate, he has not offered anything to show that his wife's disability was in any way connected to Air Wisconsin's decision to discharge him. The only connection is that it possibly caused his

performance to slip.  Therefore, Air Wisconsin's decision to terminate Stansberry does not run afoul of the Act.

## III.

Because we affirm the district court's grant of summary judgment in favor of Air Wisconsin on the merits of Stansberry's associational discrimination claim, we need not address its alternate argument that Stansberry is judicially estopped from litigating this claim.

## IV.

Stansberry failed to establish a prima facie case of associational discrimination because he has not offered any evidence to suggest that Air Wisconsin terminated him on account of his wife's disability.  Air Wisconsin's decision to terminate Stansberry appears to have been based instead on his unsatisfactory performance.  While his wife's disability may have precipitated his poor performance, he is not entitled to any accommodation under the Act and Air Wisconsin was within its rights to terminate him.  Therefore, we **AFFIRM** the district court's grant of summary judgment in favor of Air Wisconsin.