NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0552n.06

10-5470

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Aug 08, 2011**

LEONARD GREEN, Clerk

CORBY BURUS,                                                    )
                                                               )        ON APPEAL FROM THE
          Plaintiff-Appellant,                                 )        UNITED STATES DISTRICT
                                                               )        COURT FOR THE EASTERN
                   v.                                          )        DISTRICT OF KENTUCKY
                                                               )
THE WELLPOINT COMPANIES, INC., dba )                                    **OPINION**
ANTHEM BLUE CROSS and BLUE SHIELD,                             )
                                                               )
          Defendant-Appellee.                                  )

_____

**Before: SUTTON and WHITE, Circuit Judges; STAFFORD, District Judge.***

**PER CURIAM.** Plaintiff Corby Burus appeals from the district court's grant of summary

judgment dismissing her demotion and termination claims in this employment-discrimination case.

We **AFFIRM**, adopting the district court's opinion, *Burus v. Wellpoint Cos., Inc.*, No. 5:08-154-

KKC, 2010 WL 1253089 (E.D. Ky. Mar. 25, 2010), with a minor exception pertinent to the

demotion claim. We add discussion on certain issues the district court did not address.

Apart from challenging the district court's grant of summary judgment, Burus asserts on

appeal that the magistrate judge to whom discovery matters were assigned erred in refusing to

require her former employer, Defendant Wellpoint Companies (Wellpoint), to produce certain emails

during discovery. The magistrate judge issued several memorandum opinions pertinent to the

---

*The Honorable William H. Stafford, Jr., Senior United States District Court for the Northern
District of Florida, sitting by designation.

1

discovery dispute, *Burus v. Wellpoint Cos., Inc.*, No. 5:08-cv-154-KKC, 2009 WL 1097805 (E.D. Ky. Apr. 23, 2009), and *Burus v. Wellpoint Cos., Inc.*, No. 5:08-cv-154-KKC, 2009 WL 735127 (E.D. Ky. Mar. 17, 2009), which we **AFFIRM** in pertinent part, with added discussion of the pertinent procedural history.

## I

Burus began employment at Wellpoint in October 2001, as one of two Specialty Sales Executives for Kentucky and reported to Eric Neuville. At some point, Burus became a Specialty Sales Manager (SSM). In September 2003, Wellpoint promoted Burus to take over the entire state.

After several years of struggling with an undetermined medical condition, Burus's husband was diagnosed in July 2004 with olivopontocerebellar atrophy, a degenerative brain disease with no known cure. Burus's affidavit states that Wellpoint knew nothing of her husband's medical condition before this time and that, soon after the diagnosis, she informed her immediate superior, Neuville, that her husband had been diagnosed with the disease.

Anthem Blue Cross and Blue Shield and Wellpoint merged around November 2004. That month, Neuville for the first time expressed concern with Burus's performance based on her sales numbers. Neuville rated Burus a 2 ("Mixed Results") in her 2004 performance review, noting that her monthly reports were late, she lacked sufficient business and industry knowledge, received the lowest grade in the department's disability training session, and seemed unprepared and unpolished in a speech she delivered to the Specialty Sales Department, among other things.

In February 2005, Neuville told Burus that she was being placed on a Performance Review Plan for the remainder of 2005. In May or June 2005, Burus was told that she would be replaced by

Andrew Cassis, and Neuville offered her the newly-approved position of Specialty Account Manager (SAM) for Kentucky. Burus was 48 at the time, and Cassis was in his early 30s.

In August 2005, Burus assumed the SAM position, which involved less travel. *See infra*, n.1. She reported to John (J.D.) Edwards in her new position. Edwards rated Burus overall as "Highly Effective" (4 of 5) in her 2005 evaluation. After the review was filed with Human Resources, Edwards advised Burus that Neuville had attempted to have her score lowered to a 2. However, Edwards testified on deposition that Neuville asked him to lower the overall performance scores of most of Edwards's employees.

In January 2006, Anthem reorganized the Specialty Sales division, and replaced Edwards with Brian Yahne as the SAMs' manager. On August 9, 2006, Yahne issued Burus a verbal warning, which he documented in writing, but it was not placed in Burus's employment file. Yahne received complaints from SSM Cassis that Burus waited eight days before responding to an important sales lead and that she was unprepared at an important enrollment meeting. Yahne also received complaints about Burus's performance from several others. Yahne issued Burus a written warning/Corrective Action Form on September 28, 2006, because Burus had not improved her timeliness or responsiveness. Yahne terminated Burus on November 6, 2006 for her failure to correct the timeliness and responsiveness issues. Burus was replaced with a female, Jollee Birdy.

Burus pursued a discrimination claim with the local agency, completing an "Employment Intake Questionnaire" on March 6, 2007, and a discrimination charge with the EEOC on March 9, 2007. The intake questionnaire mentioned that Neuville demoted her, but the EEOC charge did not mention the demotion. The EEOC issued a right to sue letter on December 12, 2007. Burus filed the instant complaint on March 4, 2008, alleging nine causes of action: associational discrimination

3

and retaliation under the Americans With Disabilities Act (ADA), 42 U.S.C. § 12112(b)(4), and the Kentucky Civil Rights Act (KCRA), Ky. Rev. Stat. § 344.040, age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, gender discrimination under Title VII of the Civil Rights Act (Title VII), 42 U.S.C. § 2000e-2(a)(1), violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2615(a)(1), and state claims of breach of contract, intentional infliction of emotional distress, and wrongful discharge.

Following discovery, Wellpoint filed and the district court granted its motion for summary judgment, dismissing all Burus's claims. Burus does not appeal the dismissal of the FMLA and contract claims.

**II**

We first address Burus's argument that the magistrate judge erred in refusing to require Wellpoint to produce e-mails responsive to her Document Request No. 5. This court reviews discovery determinations for an abuse of discretion. *Clarksville-Montgomery, Cnty. Sch. Sys. v. United States Gypsum Co.*, 925 F.2d 993, 998 (6th Cir. 1991). We find none here.

The magistrate judge to whom discovery matters were assigned stated in his memorandum opinion and order of March 17, 2009:

> In support of her renewed motion to compel discovery and for sanctions against Wellpoint, plaintiff asserts that Wellpoint has not fully complied with the court's order requiring it to supplement the foregoing discovery requests. Specifically, plaintiff contends that Wellpoint has not complied with the court's order requiring it to supplement these discovery requests by January 30, 2009, and that as of February 6, 2009, Wellpoint had not fully supplemented its responses to Interrogatory Nos. 4, 5, and 6 and to Document Request Nos. 5, 9, 11, and 12.
>
> In response, Wellpoint objects to plaintiff's renewed motion . . . contending that with the exception of Document Request No. 5, it has supplemented its

4

responses to all of the discovery requests it was ordered to do by January 30, 2009. As to Document Request No. 5, Wellpoint states that it is still attempting to assemble the information responsive to this request in a format that can be produced to the plaintiff. Document Request No. 5 and Wellpoint's initial response thereto is set out below:

Document Request No. 5

REQUEST NO. 5: Please provide a copy of all e-mails from 2002 to present which contains any of the following words: "Corby" or "Burus."

RESPONSE:

Defendant objects . . . on the grounds that it seeks information protected from disclosure by the attorney-client privilege and the work product doctrine. Defendant further objects to the extent Request No. 5 is vague, ambiguous, overly broad and/or not reasonably calculated to lead to the discovery of relevant, admissible evidence. Subject to and without waiving its objections, and to the extent Defendant understands the Request, Defendant will produce copies of non-privileged documents responsive to this request at a mutually convenient time and place.

The foregoing Document Request was discussed during a telephone conference call with the Magistrate Judge on January 23, 2009, wherein Wellpoint's counsel acknowledged that it had not fully responded . . . because said request . . . involved more than 60,000 e-mails.

To facilitate the production of the e-mails, and, with the idea to make it more manageable, the Magistrate Judge formulated the following list of "search terms" to be employed in searching for relevant e-mails that may be responsive to plaintiff's document request: termination, separation, transfer, reprimand, performance evaluation, poor performance, deficient, failure to perform, timely reports, quotes to/from client, North Carolina trip, warning, demotion, inability to perform. Further, the Magistrate Judge limited the scope of the e-mail search for the period of time from July of 2004 to the present.

In its response to plaintiff's renewed motion to compel, Wellpoint advised that it conducted the court-ordered search, which identified approximately 609

5

responsive e-mails and that it reported these results to the court on February 2, 2009. Wellpoint also notes that by letter to plaintiff's counsel dated February 4, 2009, it explained that it was "working diligently to review the emails and will produce expeditiously those that are not privileged and that are responsive to your client's request." See Exhibit L to Declaration of Erik S. Rodriguez, attached to Wellpoint's response to plaintiff's renewed motion to compel and for sanctions [DE #36].

Having considered the statements and arguments made in support of and in opposition to plaintiff's renewed motion to compel and for sanctions, the Magistrate Judge concludes that said motion should be denied at this time, as it appears that Wellpoint has supplemented its response to all of the discovery requests that it was required to supplement, with the exception fo Document Request No. 5, and that it is making a good faith effort to complete its supplemental response thereto.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's renewed motion to compel discovery and for the imposition of sanctions against the defendant [DE #31] is DENIED.
2. Defendant is directed to complete its supplemental response to Document Request No. 5 on or before April 6, 2009, or alternatively, to report to the court why it has not completed its supplemental response and to explain why it should not be held in contempt for failing to comply with the court's orders.

*Burus*, 2009 WL 735127, at *1-3.

About one month later, the magistrate judge issued another memorandum opinion and order, which granted Burus's motion to extend the discovery deadline, extended the dispositive motion deadline, and granted Burus's motion to clarify the court's recent discovery orders. *Burus*, 2009 WL 1097805, at *4. Regarding Burus's Document Request No. 5, the memorandum opinion stated:

Defendant further advises that on April 6, 2009, in compliance with the court's prior order, it provided plaintiff with the e-mail discovery that had been the source of the discovery dispute and the subject of the renewed motion to compel discovery. Specifically, defendant advises that *it produced to plaintiff on a compact disc copies of nearly 3,000 emails and that this production supplemented its response*

6

> *to Plaintiff's Document Request No. 5.* Wellpoint further notes that this April 6 production consisted of all emails to or from Eric Neuville, Kevin Stutler, William Shulte, John Edwards, Brian Yahne and Larry Morrison that contained the words "Corby" or "Burus," plus any of the 13 Court-ordered search terms . . .

*Id.* at *2 (emphasis added).

On appeal, Burus does not mention or challenge either of these rulings, instead arguing that the magistrate judge

> inexplicably denied the Motion to Compel and allowed Wellpoint to avoid producing the requested e-mails between those directly involved in the demotion and termination of Mrs. Burus . . . . These e-mails, especially those between Eric Neuville, Brian Yahne, Kevin Stutler, and JD Edwards are critical to establishing Neuville's involvement in her termination for unlawful reasons . . . .
>
> [] Accordingly, this matter should be remanded to the district court with instructions to require the production of all e-mails between these four individuals from July 2004 to present.

Burus's appellate argument thus sidesteps that Wellpoint supplemented its responses to Document Request No. 5 with 3,000 emails on April 6, 2009, thereby complying with the magistrate judge's memorandum opinion dated March 17, 2009, *Burus*, 2009 WL 735127, at *2-3. Wellpoint's supplemental responses consisted of all emails to or from Eric Neuville, Kevin Stutler, William Shulte, John Edwards, Brian Yahne and Larry Morrison that contained the words "Corby" or "Burus," plus any of the 13 court-ordered search terms, i.e., precisely the emails that Burus on appeal argues the magistrate judge refused to order Wellpoint to produce.

We conclude that Burus has failed to show an abuse of discretion in the magistrate judge's discovery rulings pertinent to Document Request No. 5.

## III

We next address Burus's challenges to the district court's grant of summary judgment, which we review de novo. *Bentkowski v. Scene Magazine*, 637 F.3d 689, 693 (6th Cir. 2011).

## A

The district court dismissed Burus's demotion claim as time-barred. *Burus*, 2010 WL 1253089, at *2-3. Burus acknowledges that she did not timely file her demotion claim but asserts that we should apply equitable tolling, arguing that at the time of her demotion, she was not aware of the association doctrine of disability discrimination, and had no direct knowledge that she was being discriminated against because of her husband's disability, her age or gender. The district court did not address Burus's equitable tolling argument.

"[E]quitable tolling is to be carefully applied." *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 187 (6th Cir. 2008) (quoting *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988)). This court generally considers the following five factors, which are non-exclusive, in determining whether to apply equitable tolling to time-barred claims: "1) the petitioner's lack of notice of the filing requirement; 2) the petitioner's lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the respondent; and 5) petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Hughes*, 542 F.3d at 187-88 (quoting *Barry v. Mukasey*, 524 F.3d 721, 724 (6th Cir. 2008)).

Burus addresses only one of the five *Hughes* factors (prejudice to Wellpoint), asserting that Wellpoint will not be prejudiced if she is permitted to pursue her demotion claim because her "supervisors were well aware of their own actions." She does not address the remaining *Hughes* factors and cites no authority to support that equitable tolling should apply when a claimant alleges

8

lack of awareness of being discriminated against and ignorance of the law pertaining to one of her claims (association discrimination under the ADA), *see Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991) (noting that "It is well-settled that ignorance of the law alone is not sufficient to warrant equitable tolling"). Further, Burus does not argue that she was ignorant of the law of gender- and age-based discrimination, thus failing to account for her lack of diligence in pursuing her demotion claims based on her age and gender.

The district court properly dismissed Burus's demotion claim under the ADA, ADEA and Title VII under these circumstances. Although the court incorrectly stated that Burus denied she was asserting a demotion claim (when in fact Burus's argument was that the demotion was part of continuing discriminatory conduct that culminated in her termination) and dismissed the claim on that basis, the error was harmless because the court correctly determined that the demotion claim was untimely. The district court also properly determined that Burus's demotion could not serve as a basis for a hostile-environment claim. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (discrete discriminatory acts (like a demotion) are not actionable if time-barred, even if they are related to acts alleged in timely-filed charges). *See also Austion v. City of Clarksville*, 244 F. App'x 639, 649-50 (6th Cir. 2007) (where plaintiff's hostile-work-environment claim was timely filed under Title VII, i.e., filed within 300 days of a discriminatory act, he could rely on time-barred acts of discrimination, including demotion, in establishing hostile-work-environment claim.) Further, the district court properly determined that Burus's EEOC charge did not assert that the discrimination was a "continuing action," or that she was subjected to a hostile work environment, and that her complaint did not allege a hostile-environment claim. We note as well that Burus did not move to amend her complaint to add a hostile-environment claim.

**B**

Regarding her retaliation claim, Burus does not argue how the district court erred and our thorough review of the record confirms that the district court properly concluded that Burus did not establish a *prima facie* case of retaliation under the ADA. *Burus*, 2010 WL 1253089, at \*12-13.

**C**

The district court also properly dismissed Burus's ADA association-discrimination claim. *Burus*, 2010 WL 1253089, at \*10-12. On appeal, Burus repeats verbatim most of the same arguments she made below, many of which involved her alleged demotion, a claim that, as discussed above, was properly dismissed as time-barred. The only finding pertinent to the ADA claim that Burus directly challenges on appeal is that the "gap between events [Burus's telling Neuville about her husband's medical condition in July 2004, and her termination in November 2006] is too great to raise a reasonable inference of discrimination based on timing." Burus argues that this finding fails to acknowledge the totality of the circumstances, specifically that Neuville thought Burus would quit when demoted and, when she did not, he resented that she was being paid more than others, and tried to get Edwards to fire Burus.

These arguments do not undermine the district court's finding regarding timing because Yahne, not Neuville, decided to terminate Burus. Burus offers no additional evidence to refute the district court's determination that the circumstances surrounding her termination do not raise a reasonable inference that her husband's disability was a determining factor in the decision to terminate her. We note that although Burus's affidavit states that Neuville asked her on a regular basis whether she could continue to perform her sales job in light of her husband's condition, her

testimony does not support that assertion.[1]   We thus conclude that the district court properly dismissed Burus's ADA association discrimination claim.[2]

**D**

The district court properly determined that Burus did not present direct evidence that her termination violated the ADEA and Title VII. *Burus*, 2010 WL 1253089, at *4-6.  The court determined that Neuville's "young suit" remark was not made in connection with Burus's termination, as Neuville, Burus's former boss, played no role in Burus's termination.  Burus argues on appeal that the district court overlooked "the deposition of several management employees," but refers only to Edwards's testimony that Neuville wanted him (Edwards) to fire Burus.  In support,

---

[1]Burus testified that when she first told Neuville about her husband's diagnosis in July 2004, his response was "Empathetic, sorry to hear it.  He had never heard of it.  It's a very rare condition.  He had told us many times in the past he had a pharmaceutical sales background, so by just saying cerebellar, he knew that it was serious."  Regarding being demoted in August 2005, Burus testified that Neuville called her on the phone in June 2005 "we're going to move you to this position because you're a valuable part of the team and we don't want to lose you," and said "he felt like this would be a good move for me, it would allow me more time [to be with my husband, less time on the road].  I would be able to work out of Lexington, which at that time I was in the Louisville office a lot."  Regarding Burus's allegation that her husband's illness was referred to in her annual review and when she was demoted, she testified (again) of Neuville's comments when he first learned of her husband's condition, and of his comments that she would spend less time on the road in the SAM position.  Apart from those two comments, Burus testified that "There were numerous times that he would ask me how he was doing, and I did not take it that it was always just a genuine request of how is he doing."  Burus interpreted his questions as "More that he was wanting to see if there was going to be a problem with me doing my job, because he [Neuville] had to have his numbers [sales]."  When asked if Neuville ever said that to her, she answered "I can't recall."

[2]During the pendency of this appeal, this court issued its first published decision on association discrimination, *Stansberry v. Air Wisconsin Airlines Corp.*, No. 09-2499, 2011 WL 2621901 (6th Cir. July 6, 2011).  In *Stansberry*, as in the instant case, the plaintiff did not present direct evidence of association discrimination and her claim was analyzed using the prima facie standard set forth in *Den Hartog v. Wasatch Acad.*, 129 F.3d 1076, 1084 (10th Cir. 1997), which the district court in the instant case applied.  The district court's analysis in the instant case is thus in keeping with *Stansberry*.

11

Burus cites her own deposition testimony, in which she states that Edwards told her that Neuville told Kevin [Stutler] that Neuville wanted her gone. However, as the district court noted, Neuville made the "young suit" remark nearly two years before Burus's termination, and neither Neuville nor Edwards played a role in the decision to terminate Burus; rather, her supervisor at the time, Yahne, did.

## E

The district court also properly concluded that Burus presented insufficient circumstantial evidence to establish a *prima facie* case of either gender or age discrimination related to her termination. *Burus*, 2010 WL 1253089, at *6-7.

## IV

The district court went on to conclude that Wellpoint had articulated a legitimate nondiscriminatory reason for terminating Burus, and that Burus failed to establish pretext. We do not reach the question of pretext beyond noting that the court's analysis and determination that Burus failed to present any of the three types of evidence that can establish pretext is spot-on. *Id.* at *9-10.

## V

Burus's state-law claims were properly dismissed for the reasons stated by the district court. *Id.* at *13-14.

## VI

For the foregoing reasons, we adopt the district court's opinion granting summary judgment of Burus's claims, with the added discussion herein, and with the exception of its determination that Burus did not assert a demotion claim, an error that was harmless because the court correctly determined that her demotion claim was time-barred.

12

On the discovery issue, we conclude there was no abuse of discretion, affirming the magistrate judge's memorandum opinions in pertinent part for the reasons discussed herein.

We **AFFIRM**.