NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0076n.06

No. 12-1311

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CYNTHIA BIMBERG, | ) | **FILED** |
| | ) | ***Jan 17, 2013*** |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| ELKTON-PIGEON-BAY PORT LAKER | ) | EASTERN DISTRICT OF MICHIGAN |
| SCHOOLS, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: BATCHELDER, Chief Circuit Judge, DAUGHTREY, and ROGERS, Circuit Judges.

PER CURIAM. Plaintiff Cynthia Bimberg appeals the district court's order granting summary judgment to defendant Elkton-Pigeon-Bay Port Laker Schools, referred to in the record as Laker Schools. Bimberg filed a complaint against the school district claiming that she was terminated from her job as a school bus driver based on associational discrimination, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(b)(4). The district court found that she had been terminated because she did not meet the attendance requirements of her job, entered summary judgment in favor of Laker Schools, and dismissed the complaint with prejudice. Bimberg now appeals, contending that the district court "erred in failing to find direct evidence of associational discrimination" and "in failing to find a genuine question of fact regarding plaintiff's *prima facie* case of

associational discrimination under the [ADA]," and asks us to set aside the order of summary judgment. We conclude that the district court did not err in its analysis of these two issues and affirm.

Cynthia Bimberg had worked for the Laker Schools for 15 years before she married Kenneth Bimberg in 2008. Unfortunately, her husband was diagnosed with metastasized melanoma in their first year of marriage, and Bimberg asked for an extended leave to care for him. The school policy, in conformity with the requirements of the federal Family and Medical Leave Act, provided for up to 12 weeks of unpaid leave to respond to a family health crisis. Despite that 12-week cap, Bimberg's union representative managed to secure a written agreement to allow leave from the beginning of the new semester on January 5, 2009, until the end of the school year in early June 2009. In the meantime, the Bimbergs learned that they would need to go to the M.D. Anderson cancer facility in Houston to continue Kenneth Bimgerg's treatment, and Cynthia Bimberg's last day at work before they left was December 18, 2008. By May, it was clear that she could not return as planned, and her leave was extended to December 18, 2009, one year from the last day she had worked for Laker Schools.

Despite deposition testimony by various members of the Laker Schools administration and union representatives that Bimberg was repeatedly notified to report for work no later than December 18, 2009, she took the position that her year's leave ran from January 5, 2009, to January 4, 2010. As a result, Bimberg did not appear for work as

ordered and, in a phone conversation with William Howard, one of her union representatives, she was informed that the school superintendent was preparing a letter of termination. Bimberg alleged that Howard advised her to resign rather than be fired. She did, she said, under the assumption that resignation would preserve her pension rights, but in fact it defeated her right to collect unemployment benefits. Her subsequent attempt to rescind her resignation was rejected by the school superintendent, with the result that her employment was terminated. She was given the opportunity to sign up to act as a substitute driver when she returned from Texas, but her eventual contact with Laker Schools, nine months after her husband's death in February 2010, came too late to be effective. She later filed this action, claiming associational discrimination under the ADA.

The district court granted summary judgment to the school district, making the following determination:

> In this case, the undisputed evidence establishes that Defendant terminated the employment relationship because Plaintiff did not return to work when required, violating Defendant's neutral attendance policy. And Plaintiff offers no evidence that her husband's disability factored into Defendant's decision. The reason that Plaintiff was absent from work was not an issue for Defendant – the issue was that Plaintiff was absent for more than a year.

On appeal, Bimberg makes two arguments. She contends, first, that the district court erred in failing to find that she had offered direct evidence of discrimination. This claim was predicated on two statements made to her. The first was made by a fellow bus

driver who suggested that Bimberg had "purposely got [her husband] sick so [she] could have a vacation." The other was a comment by the superintendent of schools who, when Bimberg returned to Michigan temporarily in the spring of 2009, commented that it "must be great to be able to go down south for the winter." But, as the district court noted, neither statement is direct evidence, because discrimination could only be discerned through a series of inferences:

> [F]rom a suggestion that Plaintiff was treating her husband's disability as a vacation, to an implied hostility to those who are not working (that is, those "on vacation"), to a latent hostility to anyone who is not capable of working (that is, the disabled), to the conclusion that Defendant terminated Plaintiff's employment because of discriminatory animus towards Plaintiff's association with a person who [is disabled].

The district court concluded, however, that "[p]iling inference upon inference in this manner is not direct evidence of discrimination. It is its antithesis." We agree.

That ruling left Bimberg with only one other option – to establish associational discrimination through circumstantial evidence, as provided by the four-part standard in *Stansberry v. Wisconsin Airlines Corp.*, 651 F.3d 482, 487 (6th Cir. 2011). Bimberg could meet three of those requirements: (1) proof that she was qualified for the position of bus driver, (2) an adverse employment action by the employer, and (3) her association, known to the employer, with a disabled person. But the district court found that Bimberg could not establish the fourth *Stansberry* requirement: that the adverse employment action – here, her termination – "occurred under circumstances that raise a reasonable inference that the

disability of [her husband] was a determining factor in the decision" to terminate. *Id.* The district court held, instead, that "[t]he undisputed evidence establishes that Defendant's decision was made because Plaintiff did not return to work when ordered to, violating a neutral employer policy concerning attendance," but found "no evidence that her husband's disability factored into Defendant's decision."

That brings us to Bimberg's second argument on appeal: that the district court erred in failing to find a genuine dispute of material fact regarding her *prima facie* case of associational discrimination, in turn making summary judgment inappropriate. We glean from the briefs that the alleged factual dispute concerns Bimberg's insistence that her year of unpaid leave ended on January 4, 2010, not on December 18, 2009. But Bimberg conceded in her deposition testimony that she would not have returned to work in January 2010 in any event, because she could not leave her terminally ill husband in Houston. Indeed, she did not return to Michigan permanently until a week after his death on February 11, 2010. As a result, we must conclude that the dispute of fact that she identified was not material and, thus, did not prevent the district court from entering summary judgment.

It is apparent that Cynthia Bimberg was motivated by the hope that Laker Schools would relent and, on humanitarian grounds, allow her to take what, from their point of view, constituted an indefinite leave. The school district's failure to do so clearly did not constitute a violation of the ADA, and the district court did not err in holding that Laker

Schools was entitled to summary judgment in its favor. That judgment is, therefore,

AFFIRMED.