**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3065
_____

PATRICIA A. DODSON,
Appellant

v.

COATESVILLE HOSPITAL CORPORATION d/b/a Brandywine Hospital
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-16-cv-05857)
District Judge: Hon. Michael M. Baylson
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 21, 2019
_____

Before: McKEE, SHWARTZ, and FUENTES, Circuit Judges.

(Filed:  June 3, 2019)
_____

OPINION*
_____

SHWARTZ, Circuit Judge.

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Plaintiff Patricia Dodson filed suit against her former employer, Coatesville Hospital Corporation ("the Hospital"), alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and Pennsylvania Human Relations Act ("PHRA") and associational disability discrimination, in violation of the Americans with Disabilities Act ("ADA") and PHRA.[1]  The District Court granted the Hospital's motion to dismiss the age discrimination claims, Dodson v. Coatesville Hosp. Corp., No. CV 16-5857, 2017 WL 2798560, at *1 (E.D. Pa. June 28, 2017) ("Dodson I"), and thereafter granted its motion for summary judgment on the associational disability discrimination claims.  Dodson v. Coatesville Hosp. Corp., No. CV 16-5857, 2018 WL 4007083, at *1 (E.D. Pa. Aug. 21, 2018) ("Dodson II").  For the following reasons, we will affirm both orders.

I[2]

We first address Dodson's appeal of the order dismissing her age discrimination claims.  We begin by setting forth the relevant factual allegations.

---

[1] Dodson also brought ADA and PHRA retaliation claims but withdrew them.

[2] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. We have jurisdiction under 28 U.S.C. § 1291.  We review de novo the Court's order dismissing Dodson's age discrimination claim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Fowler v. UPMC Shadyside, 578 F.3d 203, 206 (3d Cir. 2009).  To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  We disregard "a pleading's legal conclusions" but "assume all remaining factual allegations to be true" and construe them in the light most favorable to the plaintiff.  Connelly v. Lane Constr. Corp., 809 F.3d 780, 790 (3d Cir. 2016).

A

In May 2010, the Hospital hired Dodson as Director of Physician Practices. Dodson reported to Chief Executive Officer ("CEO") Bryan Burklow. In January 2011, Dodson's husband underwent surgery for colon cancer and began an extensive course of treatment. Another member of Dodson's immediate family received emergency medical treatment for a mental health condition in September 2011.

At a management meeting in October 2011, Burklow stated that employee health insurance costs influence the Hospital's profitability and observed that some of the leadership had "serious illnesses" in their families, speculating this was "because of our age." App. 35 ¶ 19. The Hospital terminated Dodson in November 2011. She was 51 years old.

Dodson filed claims of age discrimination against the Hospital alleging that since Burklow became CEO, the Hospital has "engaged in a pattern of behavior leading to the terminations or resignations of older and middle aged employees." App. 35 ¶ 20. In support of this allegation, Dodson listed twelve "older and middle aged employees" who either resigned or were terminated by the Hospital within a year of Dodson's termination.

B

To succeed on her age discrimination claim, Dodson must establish that her age was a "but-for" cause of her termination. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-78 (2009). Since Dodson relies on circumstantial evidence, we use the McDonnell Douglas burden-shifting framework, the first step of which involves evaluating the plaintiff's prima facie case. Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005). If the

3

plaintiff establishes a prima facie case, the employer must demonstrate that it had a legitimate, nondiscriminatory reason for its action, which the plaintiff must then show was "mere pretext" for unlawful discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). A prima facie case of age discrimination under both the ADEA and the PHRA, see Fasold, 409 F.3d at 184, requires the plaintiff to allege that: (1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the position in question; and (4) the adverse action occurred under circumstances that create an inference that plaintiff's age was a motivating factor,[3] see O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310 (1996).

The Hospital contends that Dodson failed to plead facts establishing the fourth element. We agree. First, Burklow's single stray remark that the managers are more likely to confront issues of illness and death "because of our age" does not suggest

---

[3] We have sometimes phrased the fourth element as requiring the plaintiff to show that she "was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive." Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644 (3d Cir. 2015). The Willis formulation can be traced back to a case in which we held that "an ADEA plaintiff may establish the fourth element of the McDonnell Douglas test for a prima facie case by showing that s/he was replaced by a person sufficiently younger to permit an inference of age discrimination." Maxfield v. Sinclair Int'l, 766 F.2d 788, 793 (3d Cir. 1985). This is just one way to establish the fourth element. A plaintiff may also establish the fourth element with proof that, during a reduction in force, younger employees were retained when plaintiff was fired, Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231, 234-36 (3d Cir. 1999), or with other facts sufficient "to create an inference that an employment decision was based on" age, O'Connor, 517 U.S. at 312.

discriminatory animus, and it was not directed at Dodson.[4]  Second, Dodson failed to

allege any other facts that might give rise to an inference that she was terminated because

of her age, such as the age of the employee who replaced her or whether similarly

situated employees were not terminated because they were significantly younger.[5]  The

Court therefore correctly dismissed Dodson's age discrimination claims.

II[6]

We now turn to Dodson's appeal of the order granting summary judgment for the

Hospital on her associational disability discrimination claims.  We begin by setting forth

the relevant facts.

---

[4] While factors other than age can serve as a "proxy" for age discrimination, Tramp v. Associated Underwriters, Inc., 768 F.3d 793, 801 (8th Cir. 2014) (reversing grant of summary judgment on age discrimination claims where company was aware of high health insurance costs for older employees, had recommended that they switch to Medicare instead of the company's health plan, and had referenced that losing the oldest and sickest employees had lowered insurance costs), Dodson's allegations fail to raise an inference that she was terminated due to her age.

[5] Standing alone, Dodson's allegation that twelve other "older workers" resigned or were terminated within a year of her termination does not give rise to an inference that either their or her separations were the result of age discrimination.  Among other things, these individuals were not similarly situated to Dodson as they held different positions, and there is no allegation Burklow played a role in their departures.

[6] Our review of the District Court's order granting summary judgment is plenary, Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418 (3d Cir. 2013), and we view the facts and make all reasonable inferences in favor of Dodson, the non-movant, Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).  Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

5

## A

As the Director of Physician Practices, Dodson managed the operations of existing physician practices and recruited new ones. She knew when she accepted the position that there had been turnover in the role and that there were operational issues at several of the practices. To address these issues, Dodson placed managers in various practices to manage day-to-day operations. Her responsibilities expanded as the Hospital acquired additional practices.

Dodson testified that her relationship with Burklow was initially "very professional," but that after her husband was hospitalized and diagnosed with cancer in July 2010, her relationship with Burklow "disintegrated." App. 118. Burklow "became increasingly interested in [her] husband's diagnosis and treatment plan." App. 76. Dodson insists that Burklow "did not have a genuine concern" and instead was focused on her job and how much time she would need to take off. App. 106-07. Although Dodson admitted that Burklow never said anything disparaging to Dodson about her husband's illness or expressed concern about the cost of his treatment to the Hospital, she claims that Burklow repeatedly referenced his own experience dealing with his daughter's brain cancer and subsequent mental health problems, and emphasized how expensive and disruptive such illnesses could be. Burklow said his questions and references to his own experience were demonstrations of empathy.

In December 2010 or January 2011, Burklow and Dodson attended a meeting with a physician in a practice group during which Burklow suggested that Dodson was distracted by her husband's illness. Dodson further testified that beginning in February

6

or March 2011, Burklow "started to criticize, without any [basis]," Dodson's work. App. 76.

Throughout 2010 and 2011, the Hospital had financial troubles. Dodson testified that the Hospital had been looking to eliminate positions since she started. In March 2011, the Hospital's parent company directed Burklow to eliminate thirty-five positions. During a management meeting in late October 2011, Dodson's department was specifically identified as a drain on the Hospital's finances. During the same meeting, Burklow remarked that many of the managers or members of their families had suffered illness, likely because of their ages. Burklow testified that three or four of the managers in the meeting had been ill or had ill relatives and that he made the statement to show empathy for their circumstances.

Days before she was fired, Burklow advised Dodson that the Hospital was conducting a reduction in force and asked her to provide him with a list of positions in her department that could be cut. Dodson believed that, with her suggestions, Burklow would meet his targets. However, Burklow later informed her that he "didn't make his numbers" and the Hospital was eliminating her position. App. 99. Burklow was the sole decision-maker. Burklow testified that Dodson's termination was about "hit[ting] a number," not her performance. App. 146. During the November 2011 reduction in force, the Hospital eliminated eight positions including Dodson's.

Dodson asserts that her termination was discriminatory. She claims that even though she took off limited time from work, Burklow repeatedly asked whether she would need to miss work to care for her husband, and made critical comments to Dodson

7

about another employee's use of family and medical leave. She also claims that although she never discussed her family's health insurance with Burklow, he must have known about the costs.[7] Specifically, Dodson explained that when a "[Hospital-]insured employee or a dependent utilizes hospital services it actually costs the hospital money. My husband was a pretty high user of those services and had multiple procedures done, had an extended ICU stay and I'm sure that it cost the hospital a considerable amount of money." App. 123. However, both Burklow and the human resources manager testified that the Hospital did not track by employee the cost of providing health insurance.

After Dodson was fired, Burklow established a management committee to take over Dodson's role running the practices. An employee whom Dodson had supervised declared that she was not aware of the formation of such a committee but that after Dodson was fired, she took over most of Dodson's responsibilities. More than three years after Dodson's termination, the Hospital hired a replacement for her position.

B

Dodson asserts that her termination violates the ADA and PHRA. She specifically invokes the ADA and PHRA association provisions, which prohibit denying equal jobs to qualified individuals because of their association with someone with a disability. 42 U.S.C. § 12112(b)(4); 43 Pa. Stat. § 955(l). Because Dodson has offered no direct evidence of associational disability discrimination, this claim is also assessed under the

---

[7] As further evidence of Burklow's knowledge of her family's confidential medical information, she claims that in September 2011, the day after Dodson brought her son to the emergency room to address suicidal ideation, Burklow, whom she had not told about the incident, asked her how her son was doing.

8

McDonnell Douglas framework, which requires her to establish a prima facie case of discrimination and show that the Hospital's legitimate nondiscriminatory reason for terminating her was pretextual.

Even assuming that Dodson established a prima facie case of associational disability discrimination,[8] she failed to adduce proof that the Hospital's stated reason for her firing was pretextual. At the pretext stage, "the plaintiff must convince the factfinder that not only was the employer's proffered reason false, but the real reason was impermissible discrimination." Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 645 (3d Cir. 2015). The Hospital has presented a legitimate nondiscriminatory reason for Dodson's termination: the need to reduce costs. Burklow explained that the Hospital was no longer recruiting additional practices and he believed that the existing

---

[8] Multiple courts of appeals have adopted the following standard for a prima facie case of associational disability discrimination:

> (1) the plaintiff was "qualified" for the job at the time of the adverse employment action; (2) the plaintiff was subjected to adverse employment action; (3) the plaintiff was known by his employer at the time to have a relative or associate with a disability; [and] (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.

Den Hartog v. Wasatch Acad., 129 F.3d 1076, 1085 (10th Cir. 1997); accord Stansberry v. Air Wis. Airlines Corp., 651 F.3d 482, 487 (6th Cir. 2011); Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1231 (11th Cir. 1999). Our Court has observed that the fourth element can be met, for example, where an adverse employment action was "motivated by unfounded stereotypes or assumptions about the need to care for a disabled person"; the "disabled relative's perceived health care costs to the company"; "fear of an employee contracting or spreading a relative's disease'"; or because the employee was perceived to be distracted by the relative's disability. Erdman v. Nationwide Ins. Co., 582 F.3d 500, 511 & n.7 (3d Cir. 2009).

individual practice managers could manage the practices without a director. Dodson

questions the Hospital's evidence supporting its justification and claims that Burklow's

statements regarding her husband's illness demonstrate that Burklow held an unfounded

assumption that Dodson was distracted by her husband's illness and that treatment for his

illness was a significant expense for the Hospital. These arguments are unavailing.

First, with respect to Dodson's challenge to the sufficiency of the evidence

concerning its reason for termination, Dodson fails to appreciate that the Hospital's

burden is "relatively light," and is satisfied

> by introducing evidence which, taken as true, would permit the conclusion that
> there was a nondiscriminatory reason for the unfavorable employment decision.
> The employer need not prove that the tendered reason actually motivated its
> behavior, as throughout this burden-shifting paradigm the ultimate burden of
> proving intentional discrimination always rests with the plaintiff.

Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (emphasis omitted) (internal citation

omitted). Dodson claims that the Hospital did not produce any documents showing that

its work force reduction was legitimate and necessary, and instead relied only on

Burklow's memory of how the reduction-in-force decisions were made. She suggests

that his testimony should be rejected because his recollection that he was ordered to

reduce a gross payroll amount is inconsistent with evidence that he was directed to reduce

a specific number of positions. Even if that were accurate,[9] "proof that the employer's

proffered reason is unpersuasive, or even obviously contrived, does not necessarily

---

[9] Notably, Dodson admitted that the Hospital had financial difficulties and sought to cut costs through staff reductions, and thus she corroborates Burklow's account that staff reductions were the means to reduce costs.

10

establish that the plaintiff's proffered reason . . . is correct. . . . [I]t is not enough . . . to dis[]believe the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 146-47 (2000) (alteration in original) (emphasis, internal quotation marks, and citations omitted).

Second, while "a decision motivated by unfounded stereotypes or assumptions about the need to care for a disabled person may be fairly construed as [discrimination] 'because of the . . . disability' itself," Erdman v. Nationwide Ins. Co., 582 F.3d 500, 511 (3d Cir. 2009) (quoting 42 U.S.C. § 12112(b)(4)), Dodson has not demonstrated that Burklow harbored "unfounded stereotypes and assumptions" about the impact of her husband's illness on her job performance or the Hospital's expenses. Indeed, Burklow testified that her termination was based on the need to reduce employees, not on her job performance. App. 146. Additionally, Dodson's counsel conceded at oral argument before the District Court that there is no evidence in the record that Burklow, the undisputed decision-maker, knew whether Dodson and her family received their health insurance from the Hospital, whether her husband received care at the Hospital, or the precise cost of his care. Dodson's conclusory, self-serving assertions regarding her impressions of Burklow's thoughts are "insufficient to withstand a motion for summary judgment" on her associational discrimination claims. Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009).

Accordingly, the District Court did not err in granting summary judgment for the Hospital on Dodson's associational disability claims.

11

## III

For the foregoing reasons, we will affirm.