Grimes, J., Dissenting.
Respectfully, I dissent. I am not prepared to go where no one has gone before, to find a California employer may be liable under FEHA for failing to accommodate a nondisabled employee's request to modify his work schedule to permit him to care for a disabled family member. It is particularly inappropriate to do so in this case, because plaintiff expressly told us in his briefs he "has abandoned this theory of liability." Plaintiff repeatedly tells us "this is not an accommodation case." Plaintiff asserts the issue "whether reasonable accommodations are available to the associates of the disabled ... is not before this Court." He points out that he has not challenged the trial court's ruling on his cause of action for failure to provide reasonable accommodations.
Instead, plaintiff asserts that even if he was not entitled to an accommodation under FEHA, he was "entitled to an intermittent medical leave of absence to care for his disabled son pursuant to the CFRA [California Family Rights Act (Gov.Code, § 12945.2 ) ], at least on the day he was terminated."[1] Plaintiff states: "The fact that [defendant] may not have discriminated because it was not obligated to affirmatively act to protect [plaintiff's] employment under one set of laws (the reasonable accommodation provision of the FEHA) does not mean it did not discriminate when another set of laws (the child care leave provision of the CFRA) obligated [defendant] to affirmatively act to protect his employment. In effect, the CFRA forbade [defendant] from terminating [plaintiff] on April 23, 2013 after he voiced his inability to work his schedule for the day because of his child care obligations to his disabled son." Plaintiff never alleged defendant violated CFRA, raising this issue for the first time in his appellate reply brief. Assuming for the sake of argument that plaintiff might have been able to allege a CFRA violation, there is no basis for finding a FEHA violation here.
*207 FEHA prohibits disability discrimination against an employee or applicant, including discrimination based on an association with a person who has a physical disability. (§ 12940, subd. (a) & § 12926, subd. (o ).) And, "FEHA requires employers to make reasonable accommodation for the known disabilities of applicants and employees to enable them to perform a *695 position's essential functions, unless doing so would produce undue hardship to the employer's operations." (Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2014) ¶ 9:2250, p. 9-194, citing § 12940, subd. (m) and other authorities.)
The majority conflates the antidiscrimination provisions of sections 12940, subdivision (a) and 12926, subdivision (o ) with the failure to accommodate provisions of section 12940, subdivision (m). The majority reasons that a person with no disability is statutorily declared to be "disabled" by association with a disabled person, thus triggering an employer's duty to accommodate a nondisabled applicant or employee so he or she can care for a disabled family member. The parties have cited no legislative history, regulation, case law, administrative decision, or secondary authority to support the majority's holding that FEHA creates a duty to accommodate a nondisabled applicant or employee who is associated with a nondisabled person. Such authority is absent from the majority opinion, as well.
The majority has gone out of its way to create a cause of action that no party to this appeal contends exists. The majority reverses the grant of summary judgment on the basis that "the plain language" of FEHA creates a duty to accommodate an employee's disabled family member-which is simply not so. The majority has indeed boldly gone into a new frontier, fraught with danger for California employers, a mission best left to the Legislature.
Putting aside for the moment the absence of authority to support a cause of action for failure to accommodate a nondisabled person with a disabled family member, there is very little California authority on discrimination against a person associated with a disabled person. The only authority expressly involving a claim of associational disability discrimination is Rope v. Auto-Chlor System of Washington, Inc. (2013) 220 Cal.App.4th 635, 163 Cal.Rptr.3d 392 (Rope ). In Rope, the court concluded the plaintiff pleaded facts sufficient to support a claim for association-based disability discrimination. (Id. at p. 642, 163 Cal.Rptr.3d 392.) The plaintiff alleged he informed his employer in late 2010 that he intended to donate a kidney to his sister in February 2011. He requested a paid leave of absence to do so, under a then-new statute requiring the employer to provide paid leave, effective as of January 1, 2011. Two days before the statute took effect, the employer terminated the plaintiff's employment on the allegedly pretextual basis of poor performance. (Id. at p. 643, 163 Cal.Rptr.3d 392.)
*208 Rope observed that the "reasonable inference is that [the employer] acted preemptively to avoid an expense stemming from [the plaintiff's] association with his physically disabled sister." (Rope, supra, 220 Cal.App.4th at p. 658, 163 Cal.Rptr.3d 392.) Rope relied on Judge Posner's opinion in Larimer v. International Business Machines Corp. (7th Cir.2004) 370 F.3d 698 (Larimer ), describing Larimer as "the seminal authority on disability-based associational discrimination under the ADA (Americans with Disabilities Act of 1990; 42 U.S.C. § 12101 et seq. )...." (Rope, at p. 656, 163 Cal.Rptr.3d 392.)
In Larimer, the court identified three circumstances in which an employer might have a motive to discriminate against an employee who is associated with a disabled person, and concluded these types of situation were within the intended scope of the "rarely litigated" association provision of the ADA. The court denominated the categories as "expense," "disability by association," and "distraction." (Larimer, supra, 370 F.3d at p. 700.)
*696 Larimer explained: "[The three types] can be illustrated as follows: an employee is fired (or suffers some other adverse personnel action) because (1) ('expense') his spouse has a disability that is costly to the employer because the spouse is covered by the company's health plan; (2a) ( 'disability by association') the employee's homosexual companion is infected with HIV and the employer fears that the employee may also have become infected, through sexual contact with the companion; (2b) (another example of disability by association) one of the employee's blood relatives has a disabling ailment that has a genetic component and the employee is likely to develop the disability as well (maybe the relative is an identical twin); (3) ('distraction') the employee is somewhat inattentive at work because his spouse or child has a disability that requires his attention, yet not so inattentive that to perform to his employer's satisfaction he would need an accommodation, perhaps by being allowed to work shorter hours." (Larimer, supra, 370 F.3d at p. 700.) As to the "distraction" category, the court continued: "The qualification concerning the need for an accommodation (that is, special consideration) is critical because the right to an accommodation, being limited to disabled employees, does not extend to a nondisabled associate of a disabled person. " (Ibid. citing cases and 29 C.F.R. § 1630.8, italics added.)
In Larimer, the court affirmed summary judgment for the employer, where the employee was fired shortly after his twin children, who were born with a variety of serious medical conditions because of their prematurity, came home from the hospital. (Larimer, supra, 370 F.3d at p. 699.) The court held the plaintiff "must lose" because the case fit none of the categories the court described. (Id. at pp. 700, 701 [no evidence that health care costs were an issue, no evidence of communicable or genetic disease, and "no evidence that [the plaintiff] was absent or distracted at work because of his wife's pregnancy or the birth and hospitalization of his daughters"].)
*209 Other federal authorities preceding Larimer, and subsequent authorities following Larimer observe that under the ADA, an employer is not obliged to accommodate an employee who is associated with a disabled person. (E.g., Tyndall v. National Educ. Centers (4th Cir.1994) 31 F.3d 209, 214 [affirming summary judgment for the employer; the ADA "does not require an employer to restructure an employee's work schedule to enable the employee to care for a relative with a disability"]; Den Hartog v. Wasatch Academy (10th Cir.1997) 129 F.3d 1076, 1084 [affirming summary judgment for the employer; the ADA "does not require an employer to make any 'reasonable accommodation' to the disabilities of relatives or associates of an employee who is not himself disabled"]; Magnus v. St. Mark United Methodist Church (7th Cir.2012) 688 F.3d 331, 339 [affirming summary judgment for the defendant employer, rejecting claim the timing of plaintiff's termination (one day after she arrived late to work because of a medical situation with her disabled daughter) was sufficient to infer associational discrimination; "despite the fact that the [employer] may have placed [plaintiff] in a difficult situation considering her commendable commitment to care for her disabled daughter [by requiring her to work weekends], she was not entitled to an accommodated schedule"] ).
FEHA, of course, is broader than the ADA. But in many ways FEHA is similar to the ADA, and we should not construe FEHA as departing from the ADA without a clear legislative statement of intent to do so. (See generally *697 Green v. State of California (2007) 42 Cal.4th 254, 262-263, 64 Cal.Rptr.3d 390, 165 P.3d 118 ["In passing [1992 amendment to FEHA], at least one legislative analysis observed the Legislature's 'conformity [to the ADA rules] will benefit employers and businesses because they will have one set of standards with which they must comply in order to be certain that they do not violate the rights of individuals with physical or mental disabilities ' "].) Our Legislature has expressly provided broader protection in FEHA than the ADA in certain important areas. (See Chin et al., Cal. Practice Guide: Employment Litigation, supra, ¶¶ 9:2091 to 9:2100, pp. 9-173 to 9-175.) Notably, the Legislature has not stated an intent that FEHA depart from the ADA by requiring an employer to engage in the interactive process with, and accommodate a nondisabled employee with a disabled family member.
I am sympathetic to plaintiff's point that his previous supervisors had accommodated his requests for earlier shifts, and that his last supervisor had discretion to assign him to earlier shifts on April 23, 2013. But I am left with no basis in the law on which to find a FEHA violation based on the assignment of a route to Oxnard with a noon start time (a schedule virtually identical to the shift plaintiff accepted the day before without complaint). Even in the case of a disabled employee, toward whom the employer does owe a duty to reasonably accommodate, it has been held that the employer's past accommodations did not prove the reasonableness of the employee's *210 request to continue to provide those accommodations. (See, e.g., Terrell v. USAir (11th Cir.1998) 132 F.3d 621, 626, fn. 6 [employer who temporarily reduced employee's working hours to accommodate carpal tunnel syndrome was not obliged to create part-time position; "An employer that 'bends over backwards to accommodate a disabled worker ... must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation.' "].)
Finally, turning to the retaliation claim, I disagree that plaintiff demonstrated a triable issue of fact as to the first element of a retaliation claim: that he engaged in a protected activity. (Yanowitz v. L'Oreal USA, Inc. (2005) 36 Cal.4th 1028, 1042, 32 Cal.Rptr.3d 436, 116 P.3d 1123 (Yanowitz ).) Plaintiff contends he "oppos[ed] associational disability discrimination" when he complained about his supervisor "interfering with his schedule." While a formal accusation of discrimination is unnecessary, it is necessary that " 'the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner.' [Citation.]" ( *698 Id. at p. 1047, 32 Cal.Rptr.3d 436, 116 P.3d 1123.) There is nothing at all in the evidence to suggest that plaintiff thought defendant's scheduling was unlawful-as opposed to undesirable from plaintiff's point of view. And certainly there is no evidence to suggest that plaintiff actually conveyed to defendant any belief that defendant's actions were unlawful.
The majority likens this case to Yanowitz, where the plaintiff did not explicitly state to her superior that she believed his order to terminate a sales associate, because the associate was " 'not good looking enough,' " constituted unlawful sex discrimination. (Yanowitz, supra, 36 Cal.4th at p. 1044, 32 Cal.Rptr.3d 436, 116 P.3d 1123.) But in Yanowitz, the evidence permitted a finding that, in view of the nature of the order, the plaintiff's "refusal to implement the order, coupled with her multiple requests for 'adequate justification,' sufficiently communicated to [her superior] that she believed that his order was discriminatory." (Id. at p. 1048, 32 Cal.Rptr.3d 436, 116 P.3d 1123.) There is no comparable evidence here that plaintiff believed defendant's scheduling was discriminatory or that he conveyed that belief to defendant. "Standing alone, an employee's unarticulated belief that an employer is engaging in discrimination will not suffice to establish protected conduct for the purposes of establishing a prima facie case of retaliation, where there is no evidence the employer knew that the employee's opposition was based upon a reasonable belief that the employer was engaging in discrimination." (Id. at p. 1046, 32 Cal.Rptr.3d 436, 116 P.3d 1123.)
I would affirm the grant of summary judgment for defendant. I would reverse the trial court's order awarding defendant its costs and remand for a ruling under the standard announced in Williams v. Chino Valley Independent Fire Dist. (2015) 61 Cal.4th 97, 99-100, 186 Cal.Rptr.3d 826, 347 P.3d 976 *211 "an unsuccessful FEHA plaintiff should not be ordered to pay the defendant's fees or costs unless the plaintiff brought or continued litigating the action without an objective basis for believing it had potential merit").

Further statutory references are to the Government Code unless otherwise specified.