GRIMES, J.,
Dissenting.—Respectfully, I dissent.
The majority in the original published opinion in this appeal, filed April 4, 2016, held that the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; FEHA) creates a duty according to the plain language of the act to provide reasonable accommodations to an applicant or employee who is associated with a disabled person. The present majority opinion has retreated from that holding. My colleagues state they do not decide whether *1052 FEHA establishes a separate duty to reasonably accommodate employees who associate with a disabled person. (Maj. opn. ante, at p. 1038.) The majority neither acknowledges its prior holding nor explains the retreat from it. The majority does, however, “find accommodation relevant as to plaintiff’s discrimination cause of action.” (Maj. opn. ante, at p. 1038.) And, while repeating that it does not decide the point, the majority observes that Government Code section 12940, subdivision (m)[1]—making it unlawful to fail to reasonably accommodate the known physical disability of an applicant or employee—“may reasonably be interpreted to require accommodation based on the employee’s association with a physically disabled person.” (Maj. opn. ante, at p. 1039.)
While ordinarily I would not discuss an undecided issue, I am compelled to do so here. For while the majority purports not to decide whether FEHA requires an employer to reasonably accommodate employees who associate with a disabled person, in my view the majority in effect has done just that. I disagree with the majority’s approach for four reasons.
First, despite the grant of rehearing in this case, the majority explicitly refused to allow the parties to brief the critical issue of whether and how accommodation is relevant to plaintiff’s discrimination cause of action. Second, I cannot agree with the majority’s proposition that the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.; ADA) and the federal cases decided under it are “easily distinguished” and that we should “part ways with federal case authority” because the statutory language in the ADA is not parallel with FEHA. (Maj. opn. ante, at pp. 1039-1040.) On the contrary, I see no reason to construe FEHA as departing from the ADA on this issue. Third, unless there is a duty to adjust the work schedule of a nondisabled employee to accommodate the needs of a disabled associate, there is no evidence from which to infer the defendant employer here discriminated against plaintiff when it assigned a shift that did not meet those needs, and fired plaintiff for refusing the assignment. Fourth, plaintiff did not demonstrate a material factual dispute whether he engaged in a protected activity to support a retaliation claim, because under the law in effect during his employment with defendant, repeated requests for an accommodation, without more, did not constitute protected activity. In short, the conduct at the heart of plaintiff’s claim is defendant’s refusal to assign a shift that would allow plaintiff to tend to his disabled son. No authority has held an employer must do so, and nor should we.
*1053 1. The Majority Did Not Comport with Government Code Section 68081 in Partially Denying Defendant’s Petition for Rehearing.
In my earlier dissent, I pointed out that plaintiff expressly told us in his briefs he had abandoned the theory that an employer has a duty to accommodate a nondisabled employee who is associated with a disabled person. The majority states that plaintiff “abandoned the reasonable accommodation cause of action.” (Maj. opn. ante, at p. 1038.) Not so; plaintiff did not merely abandon one cause of action. He expressly abandoned the premise of a duty to accommodate a disabled associate. Plaintiff repeatedly told us “this is not an accommodation case.” Plaintiff asserted the issue “whether reasonable accommodations are available to the associates of the disabled ... is not before this Court.”
Instead, plaintiff asserted that even if he was not entitled to an accommodation under FEHA, he was “entitled to an intermittent medical leave of absence to care for his disabled son pursuant to the CFRA [California Family Rights Act (§ 12945.2)], at least on the day he was terminated.” Plaintiff stated: “The fact that [defendant] may not have discriminated because it was not obligated to affirmatively act to protect [plaintiffs] employment under one set of laws (the reasonable accommodation provision of the FEHA) does not mean it did not discriminate when another set of laws (the child care leave provision of the CFRA) obligated [defendant] to affirmatively act to protect his employment. In effect, the CFRA forbade [defendant] from terminating [plaintiff] on April 23, 2013 after he voiced his inability to work his schedule for the day because of his child care obligations to his disabled son.”
Undeterred by the absence of briefing on an issue that no party proposed, the majority held in the opinion filed April 4, 2016, that FEHA creates a duty to accommodate a nondisabled employee who is associated with a disabled person.
Thereafter, defendant petitioned for rehearing on three grounds, the first two of which are these: “First, the Court based its decision to reverse the dismissal of Plaintiffs associational disability discrimination claim on its determination that [FEHA] requires employers to accommodate non-disabled employees with disabled relatives. However, Plaintiff did not appeal the dismissal of his failure to accommodate claim under FEHA and expressly abandoned this theory of liability on appeal. Thus, neither party briefed the issue. [¶] Second, the Court based its decision to reverse the dismissal of Plaintiffs retaliation claim in part on its determination that Plaintiff engaged in protected conduct by requesting an accommodation. In coming to this conclusion, however, the Court relied on a change in the law, the legislature’s *1054 enactment of AB987, which occurred during the parties’ briefing process. AB987 amended FEHA to state that requests for accommodation are protected activity. However, the Court never requested supplemental briefing on the issue of whether AB987 operates retroactively, which [defendant] contends it does not. Thus, [defendant] never had an opportunity to brief this issue, as Plaintiff raised it for the first time in his reply brief.”
The majority issued an order on April 27, 2016, granting in part and denying in part the petition for rehearing. The order granted the parties permission to brief only the second issue, “whether the amendment to Government Code section 12940, subdivision (m), effective January 1, 2016 [(Assem. Bill No. 987 (2015-2016 Reg. Sess.))], applies in this case.” Assembly Bill No. 987 went into effect more than two years after plaintiff’s termination of employment with defendant. After the parties submitted their briefs, Moore v. Regents of University of California (2016) 248 Cal.App.4th 216 (Moore) was decided. Moore held that Assembly Bill No. 987 represented a change in the law, not a clarification, and Assembly Bill No. 987 did not operate retroactively. (Moore, at p. 247.) The majority now finds it need not decide this issue.
Likewise, the majority now says it does not decide whether FEHA establishes a separate duty to reasonably accommodate employees who associate with a disabled person. However, the majority finds accommodation relevant to plaintiff’s discrimination cause of action. (Maj. opn. ante, at p. 1038.) The majority reasons that “when section 12940, subdivision (m) requires employers to reasonably accommodate ‘the known physical . . . disability of an applicant or employee,’ read in conjunction with other relevant provisions, subdivision (m) may reasonably be interpreted to require accommodation based on the employee’s association with a physically disabled person. Again, given plaintiff’s concession, we do not decide this point. We only observe that the accommodation issue is not settled and that it appears significantly intertwined with the statutory prohibition against disability discrimination . . . .” (Maj. opn. ante, at pp. 1038-1039.)
The majority’s discussion of what it perceives as triable issues of material fact as to discriminatory motive and pretext (maj. opn. ante, at pp. 1042-1044) hinges entirely on Boldomero Munoz-Guillen’s (Junior) failure to accommodate plaintiff’s request for a different shift so he could care for his disabled son.
Defendant’s petition for rehearing sought permission to brief the accommodation issue that the majority characterizes as “not settled.” (Maj. opn. ante, at p. 1039) As set forth above, defendant’s first basis for seeking rehearing was that “the Court based its decision to reverse the dismissal of Plaintiff’s *1055 associational disability discrimination claim on its determination that [FEHA] requires employers to accommodate non-disabled employees with disabled relatives.” The majority opinion does not comport with section 68081 because it rests on an issue that no party proposed and that was never briefed, even after defendant timely petitioned for rehearing to brief that issue. Section 68081 provides that before issuing a decision, “based upon an issue which was not proposed or briefed by any party to the proceeding, the court shall afford the parties an opportunity to present their views on the matter through supplemental briefing.” And “[i]f the court fails to afford that opportunity, a rehearing shall be ordered upon timely petition . . . .” {Ibid.)
Ten years after section 6808l’s enactment, the Court of Appeal expressed the “significant principle” that “judges, including appellate judges, are required to follow the law. In this case, the Appellate Department of the Los Angeles Superior Court decided a case on a point not raised by the parties, and without notice to the parties that it might do so.” (California Casually Ins. Co. v. Appellate Department (1996) 46 Cal.App.4th 1145, 1147 [54 Cal.Rptr.2d 118] (California Casualty).)
In California Casualty, the defense in a court trial elicited an expert opinion over the plaintiffs objection. On appeal, the plaintiff argued the opinion was inadmissible and the error was prejudicial. The defendant responded there was no abuse of discretion and no prejudice. The appellate department scrutinized the record to determine if the expert opinion was admissible and in doing so also scrutinized the plaintiffs objection, concluding it was inadequate to preserve the issue for appellate review—an issue no party had asserted or briefed. The Court of Appeal found it was error to decide the case on that ground without warning the parties the court was considering that ground, and giving them an opportunity to brief it. (California Casualty, supra, 46 Cal.App.4th at pp. 1148-1149.)
I believe the majority had a duty to permit briefing on the issue of whether and how accommodation is “relevant to” and “significantly intertwined” with plaintiffs discrimination cause of action before it decided an “unsettled” issue which was not proposed or briefed by any party. (Adoption of Alexander S. (1988) 44 Cal.3d 857, 864-865 [245 Cal.Rptr. 1, 750 P.2d 778] [in denying a party’s request for an opportunity to submit supplemental briefing on a point first raised by the Court of Appeal in oral argument, the Court of Appeal did not comport with § 68081; Court of Appeal had a duty “upon timely request to allow supplemental briefing before it renders a decision which was not proposed or briefed by any party”].)
*1056 2. No Sound Basis Exists for Construing FEHA as Departing from Federal Case Law Governing Associational Disability Discrimination Under the ADA.
FEHA prohibits disability discrimination. It is unlawful for an employer, “because of the . . . physical disability ... of any person, to . . . discharge the person from employment ... or to discriminate against the person ... in terms, conditions, or privileges of employment.” (§ 12940, subd. (a).) FEHA also forbids discrimination based on a person’s association with a person with a physical disability. Section 12926 provides in pertinent part that “ ‘physical disability, [and other protected characteristics]’ includes a perception that . . . the person is associated with a person who has, or is perceived to have, any of those characteristics.” (§ 12926, subd. (o).)
There is very little California authority on discrimination against a person associated with a disabled person. The only authority expressly involving a claim of associational disability discrimination is Rope v. Auto-Chlor System of Washington, Inc. (2013) 220 Cal.App.4th 635 [163 Cal.Rptr.3d 392] (Rope). In Rope, the court concluded the plaintiff pleaded facts sufficient to support a claim for association-based disability discrimination. {Id. at p. 642.) The plaintiff alleged he informed his employer at the time he was hired in September 2010 that he intended to donate a kidney to his sister in February 2011. He requested a paid leave of absence to recuperate from the surgery, under a then-new statute requiring the employer to provide paid leave, effective as of January 1, 2011. Two days before the statute took effect, the employer terminated the plaintiff’s employment on the allegedly pretextual basis of poor performance. (Id. at pp. 642-643.)
Rope observed that the “reasonable inference is that [the employer] acted preemptively to avoid an expense stemming from [the plaintiff’s] association with his physically disabled sister.” (Rope, supra, 220 Cal.App.4th at p. 658.) Rope relied on Judge Posner’s opinion in Larimer v. International Business Machines (7th Cir. 2004) 370 F.3d 698 (Larimer), describing Larimer as “the seminal authority on disability-based associational discrimination under the ADA . . . .” (Rope, at p. 656.)
In Larimer, the court identified three circumstances in which an employer might have a motive to discriminate against an employee who is associated with a disabled person, and concluded these types of situation were within the intended scope of the “rarely litigated” association provision of the ADA. (Larimer, supra, 370 F.3d at p. 700.) The court denominated the categories as “expense,” “disability by association,” and “distraction.” (Ibid.)
Larimer explained: “[The three types] can be illustrated as follows: an employee is fired (or suffers some other adverse personnel action) because (1) *1057 (‘expense’) his spouse has a disability that is costly to the employer because the spouse is covered by the company’s health plan; (2a) (‘disability by association’) the employee’s homosexual companion is infected with HIV and the employer fears that the employee may also have become infected, through sexual contact with the companion; (2b) (another example of disability by association) one of the employee’s blood relatives has a disabling ailment that has a genetic component and the employee is likely to develop the disability as well (maybe the relative is an identical twin); (3) (‘distraction’) the employee is somewhat inattentive at work because his spouse or child has a disability that requires his attention, yet not so inattentive that to perform to his employer’s satisfaction he would need an accommodation, perhaps by being allowed to work shorter hours.” (Larimer, supra, 370 F.3d at p. 700.) As to the ‘“distraction” category, the court continued: ‘“The qualification concerning the need for an accommodation (that is, special consideration) is critical because the right to an accommodation, being limited to disabled employees, does not extend to a nondisabled associate of a disabled person.” (Ibid., italics added, citing cases and 29 C.F.R. § 1630.8.)
In Larimer, the court affirmed summary judgment for the employer, where the employee was fired shortly after his twin children, who were born with a variety of serious medical conditions because of their prematurity, came home from the hospital. (Larimer, supra, 370 F.3d at p. 699.) The court held the plaintiff ‘“must lose” because the case fit none of the categories the court described. (Id. at pp. 700, 701 [no evidence that health care costs were an issue, no evidence of communicable or genetic disease, and ‘“no evidence that [the plaintiff] was absent or distracted at work because of his wife’s pregnancy or the birth and hospitalization of his daughters”].)
The majority dismisses the ADA and the federal cases construing it, saying they are ‘“easily distinguished” and that we should ‘“part ways with federal case authority” because the statutory language of FEHA and the ADA are ‘“not parallel.” (Maj. opn. ante, at pp. 1039-1040.) The majority reasons that ‘“association with a physically disabled person appears to be itself a disability under FEHA” (maj. opn. ante, at p. 1038), which defines a physical disability (and all other protected characteristics) to include a perception that ‘“the person is associated with a person who has, or is perceived to have, any of those characteristics” (§ 12926, subd. (o)). According to the majority, FEHA thus ‘“differs structurally from the ADA” (maj. opn. ante, at p. 1045), which forbids discrimination against a qualified individual on the basis of disability, and defines such discrimination to encompass ‘“excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association” (42 U.S.C. § 12112(b)(4)).
*1058 I recognize the literal differences in wording, but I cannot agree that FEHA may be construed as declaring that a person with no disability ipso facto becomes “disabled” by association with a disabled person. I see no material difference in the purpose or effect of the two statutes so far as their associational disability discrimination provisions are concerned. FEHA, of course, is broader than the ADA. Rope and other authorities, and FEHA itself, confirm that the provisions of FEHA “are broadly construed and afford employees more protection than the ADA.” (Rope, supra, 220 Cal.App.4th at p. 657, citing Gelfo v. Lockheed Martin Corp. (2006) 140 Cal.App.4th 34, 57 [43 Cal.Rptr.3d 874] [“because FEHA ‘provides protections independent from those in the [ADA]’ and ‘afford[s] additional protections [than the ADA]’ (§ 12926.1, subd. (a)), state law will part ways with federal law in order to advance the legislative goal of providing greater protection to employees than the ADA”].)
But in many ways FEHA is similar to the ADA, and we should not construe FEHA as departing from the ADA without a clear legislative statement of intent to do so. (See generally Green v. State of California (2007) 42 Cal.4th 254, 262-263 [64 Cal.Rptr.3d 390, 165 P.3d 118] [“In passing [the 1992 amendment to FEHA], at least one legislative analysis observed the Legislature’s ‘conformity [to the ADA rules] will benefit employers and businesses because they will have one set of standards with which they must comply in order to be certain that they do not violate the rights of individuals with physical or mental disabilities.’ ”].) Our Legislature has expressly provided broader protection in FEHA than the ADA in certain important areas. (See Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2015) ¶¶ 9:2091 to 9:2100, pp. 9-172 to 9-173.) Notably, the Legislature has not stated an intent that FEHA depart from the ADA by requiring an employer to accommodate a nondisabled employee with a disabled associate.
3. The Evidence Does Not Permit an Inference That the Disability of Plaintiff's Son Was a Substantial Factor Motivating the Employer’s Decision to Terminate Plaintiff.
The majority, after “part[ing] ways with federal case authority,” and observing that it was “not tasked to decide whether either FEHA or the ADA creates a failure to accommodate cause of action based on associational disability” (maj. opn. ante, at p. 1040), finds that triable issues of material fact exist that prevent summary judgment on plaintiff’s associational disability discrimination claim. I again disagree, seeing no evidence from which to infer that the employer discriminated against plaintiff when it assigned a schedule that did not meet the needs of his disabled son, and fired plaintiff for refusing the assignment.
*1059 To avoid summary judgment, plaintiff was required to produce evidence that his discharge “occurred under circumstances raising a reasonable inference that the disability of his [son] was a substantial factor motivating the employer’s decision.” {Rope, supra, 220 Cal.App.4th at p. 658; see ibid. [“ ‘if the disability plays no role in the employer’s decision . . . then there is no disability discrimination’ ”].)
The majority appears to accept the fundamental principles stated in Rope and Larimer, described in part 2, ante: namely, that there are three types of situation that evidence a motive for associational disability discrimination: expense, disability by association, and distraction. The majority points out that this case does not “fit neatly within the distraction paradigm set forth in Larimer, but a neat fit is not required.” (Maj. opn. ante, at p. 1044.) I agree with that statement, and with Rope’s observation that Larimer provided an illustrative, rather than an exhaustive, list of the kinds of circumstances in which an employer might have a motive to discriminate against an employee who is associated with a disabled person. {Rope, supra, 220 Cal.App.4th at p. 657.) But while a “neat fit” is not required, the evidence here does not show any fit of any kind in any of Larimer’s categories (or any other circumstance showing a discriminatory motive).
The critical element of any circumstance that might trigger a claim of associational disability discrimination is that it suggests the employer “has a motive to discriminate against a nondisabled employee who is merely associated with a disabled person.” (Larimer, supra, 370 F.3d at p. 702, italics added.) That is the point of the Larimer categories. An employer may be motivated to discriminate against an employee based on an associate’s disability, where the associate’s disability may cost the employer money (expense), or where the employer fears the employee will become ill from associating with a disabled person (disability by association), or where the employer perceives the employee is somewhat inattentive at work due to the distraction of caring for a disabled associate, though not to the point of needing a schedule accommodation (distraction). But plaintiff here presents no evidence of any of these circumstances, or any other circumstances suggesting a motive to fire him because of his son’s disability.
As I noted earlier, the majority’s discussion of what it perceives as triable issues of material fact as to discriminatory motive and pretext (maj. opn. ante, at pp. 1042-1044) hinges entirely on Junior’s failure to accommodate plaintiff’s request for a different shift so he could care for his disabled son. In effect, the majority is saying that evidence of Junior’s refusal to make the schedule change plaintiff requested is evidence that he did so because of the son’s disability. That is a (mistaken) tautology, not cause and effect, and it necessarily assumes that the employer had an obligation to accommodate *1060 plaintiffs desired schedule. There is no such obligation under the ADA or FEHA, and no authority—until now—suggests otherwise.
Indeed, Larimer specifically held that under the ADA, there is no associational disability discrimination claim where the employer refuses to accommodate the nondisabled employee, because “the right to an accommodation, being limited to disabled employees, does not extend to a nondisabled associate of a disabled person.” (Larimer, supra, 370 F.3d at p. 700.) The majority rejects the Larimer principle in its footnote 5 because it again asserts the ADA and FEHA “differ structurally.” (Maj. opn. ante, at p. 1041, fn. 5.) This rejection of the Larimer principle is simply another demonstration that the majority’s decision rests on a point they claim not to be deciding: that FEHA obliges the employer to accommodate the disabled associate of a nondisabled employee. I am aware of no other authority or scholarly writing that takes issue with the Larimer principle; to the contrary, as explained below, federal cases before and after Larimer consistently hold there is no duty to accommodate a nondisabled employee by changing his schedule so he can care for a disabled associate.
These authorities illustrate the requirement for a showing of discriminatory motive in associational disability discrimination cases. One of those is Erdman v. Nationwide Ins. Co. (3d Cir. 2009) 582 F.3d 500 (Erdman). There, the Third Circuit affirmed summary adjudication for the employer on the plaintiffs claim she was fired because of her daughter’s known disability (Down syndrome). The court reiterated that “the association provision does not obligate employers to accommodate the schedule of an employee with a disabled relative” (id. at p. 510), and the pertinent question is whether a reasonable jury could infer from the evidence that the plaintiff was terminated “because of her [daughter’s] disability” (ibid.). The answer was no.
Erdman explained: “[T]here is a material distinction between firing an employee because of a relative’s disability and firing an employee because of the need to take time off to care for the relative. . . . [The plaintiff] must show that [the employer] was motivated by [the daughter’s] disability rather than by [the plaintiff’s] stated intention to miss work; in other words, that she would not have been fired if she had requested time off for a different reason.” (Erdman, supra, 582 F.3d at p. 510.) The court concluded the record was “devoid of evidence indicating that [the employer’s] decision to fire [the plaintiff] was motivated by [the daughter’s] disability. Indeed, [the employer] was aware of [the daughter’s] disability for many years before [the plaintiff] was fired. The most [the plaintiff] can hope to show is that she was fired for requesting time off to care for [the daughter], not because of unfounded *1061 stereotypes or assumptions on [the employer’s] part about care required by disabled persons.” (Erdman, supra, 582 F.3d at p. 511 .)[2]
This case is virtually the same as Erdman. It is undisputed that defendant hired plaintiff, despite knowing of his son’s disability and plaintiff’s need for work schedule accommodations; his job did not have a set start and end time, and his hours varied throughout his employment; defendant accommodated plaintiff’s request for earlier schedules for some years, until a new supervisor (who scheduled plaintiff to shifts that regularly earned him more money than he had with previous supervisors) one day assigned plaintiff to a schedule virtually identical to the shift plaintiff accepted the day before without complaint; and plaintiff refused the assignment after being warned that if he did so, he would be fired. Nothing about this suggests Junior’s decision to fire plaintiff was motivated by the son’s disability.
The majority discusses two cases that defendant cites in connection with the absence of evidence that plaintiff’s association with his son motivated his termination. These are Ennis v. National Assn. of Business & Education Radio, Inc. (4th Cir. 1995) 53 F.3d 55 (Ennis) and Magnus, supra, 688 F.3d 331. In both of these cases, the employers terminated the plaintiffs for poor performance, and the courts rejected the plaintiffs’ claims they were discharged because of their association with disabled family members, finding the evidence insufficient to infer associational disability discrimination. (Ennis, at p. 62 [‘“[m]ere unsupported speculation [that the employer discharged the plaintiff because of possible impact of her child’s HIV positive status on the employer’s insurance rates] is not enough to defeat a summary judgment motion”]; Magnus, at p. 338 [tinting of the plaintiff’s termination one day after her late arrival because of a medical issue with her disabled daughter was insufficient to infer associational discrimination].) The majority points *1062 out that here, “by contrast [with Ennis], there was no issue with plaintiffs performance, and thus no concomitant showing that he was legitimately terminated,” and “the many performance deficiencies in Magnus also justified the plaintiffs termination.” (Maj. opn. ante, at p. 1045.)
I see no pertinence in the majority’s distinction. In this case, defendant terminated plaintiff for refusing to work an assigned shift, not for poor performance, and the issue (the same issue as in Ennis and Magnus) is whether plaintiff has produced evidence from which a jury could infer that the real motive for the termination was his son’s disability. As in Ennis and Magnus, plaintiff has not done so, and his job performance has nothing to do with it.
The majority insists that the facts “give rise to the inference that Junior acted proactively to avoid the nuisance plaintiff’s association with his disabled son would cause Junior in the future.”[3] (Maj. opn. ante, at p. 1043.) Once again, this assertion depends on the principle the majority claims it is not deciding: that the employer is obliged to accommodate a nondisabled employee who is associated with a disabled person. In my view, as explained above, there is no authority for that conclusion, federal or state, and no reason for construing FEHA in a manner different from federal authorities construing the ADA.
I am sympathetic to plaintiff’s point that his previous supervisors had accommodated his requests for earlier shifts, and that his last supervisor *1063 could have assigned him to earlier shifts on April 23, 2013. But I am left with no basis in the law on which to find a FEHA violation based on the assignment of a route to Oxnard with a noon start time (a schedule virtually identical to the shift plaintiff accepted the day before without complaint). Even in the case of a disabled employee, toward whom the employer does owe a duty to reasonably accommodate, it has been held that the employer’s past accommodations did not prove the reasonableness of the employee’s request to continue to provide those accommodations. (See, e.g., Terrell v. USAir (11th Cir. 1998) 132 F.3d 621, 626, fn. 6 [employer who temporarily reduced employee’s working hours to accommodate carpal tunnel syndrome was not obliged to create part-time position; “An employer that ‘bends over backwards to accommodate a disabled worker . . . must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation.’ ”].)
However desirable it might seem for the law to require an employer to accommodate the needs of the disabled associate of a nondisabled employee, the courts are not free to expand the law in this way without any basis in the statutory language or other precedent.
4. The Retaliation Claim Fails Because the Evidence Does Not Permit an Inference That Plaintiff Engaged in Protected Activity.
Finally, turning to the retaliation claim, I disagree with the majority’s conclusion that plaintiff demonstrated a triable issue of fact as to the first element of a retaliation claim: that he engaged in a protected activity. (Yanowitz v. L’Oreal USA, Inc. (2005) 36 Cal.4th 1028, 1042 [32 Cal.Rptr.3d 436, 116 P.3d 1123] (Yanowitz).) Plaintiff contends he “oppos[ed] associational disability discrimination” when he complained about his supervisor “interfering with his schedule.” Plaintiff does not contend he requested an accommodation, which in any event would not have demonstrated an essential element of a retaliation claim. During plaintiff’s employment with defendant, a mere request, or even repeated requests, for an accommodation, without more, did not constitute protected activity under FEHA. (Rope, supra, 220 Cal.App.4th at pp. 652-653.)
The majority notes that Rope is no longer good law on that point. (Maj. opn. ante, at p. 1049.) But the only court to have considered the question has held that, before Assembly Bill No. 987 (2015-2016 Reg. Sess.) became effective on January 1, 2016, a mere request, or even repeated requests, for an accommodation did not constitute protected activity. (Moore, supra, 248 Cal.App.4th at p. 247 [where the plaintiff alleges the defendant engaged in retaliation before Jan. 1, 2016, the effective date of Assem. Bill No. 987, a request for accommodation, without more, is not sufficient to constitute *1064 protected activity; the plaintiff must have engaged in opposition to practices forbidden under FEHA or filed a complaint, testified, or assisted in any proceeding under FEHA].)[4]
I disagree with the majority’s conclusion that plaintiff’s repeated complaints about the changes to his schedule represented “some degree of opposition” to defendant’s failure to give plaintiff the schedule he wanted, so as to constitute protected activity. While a formal accusation of discrimination is unnecessary, it is necessary that “ ‘the employee’s communications to the employer sufficiently convey the employee’s reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner.’ [Citation.]” (Yanowitz, supra, 36 Cal.4th at p. 1047.) There is nothing at all in the evidence to suggest that plaintiff thought defendant’s scheduling was unlawful. And certainly there is no evidence to suggest that plaintiff actually conveyed to defendant any belief that defendant’s actions were unlawful. The majority summarizes the evidence in the summary judgment papers concerning plaintiff’s complaints to his employer on the last two days of his employment as follows:
“On April 22, 2013, Junior assigned plaintiff a shift that started at 11:55 a.m., the latest he had ever started a shift, and ended at 9:04 p.m. He had ‘no problem’ with the route that day because it still allowed him to be home in time for his son’s dialysis. But he told Junior: ‘Please, I need to have my job like always. I’ve always had help from everyone except you.’
“The following day, on April 23, 2013, Junior assigned plaintiff a shift beginning at 12:00 p.m. Unlike the previous day, this assignment was for a *1065 route from Los Angeles to Oxnard and back, including multiple pickups and deliveries. Plaintiff explained to Junior that it was too late in the day for him to drive that route because he could not get back in time to administer dialysis to his son by 8:00 p.m. Plaintiff requested another route or simply to take that day off. He also reminded Junior that Bermudez had already talked to Junior about plaintiffs need for shifts enabling him to leave early for his son.
“When plaintiff complained to Junior, Junior laughed and said, ‘Winston [Bermudez] doesn’t work here anymore. Now it’s me.’ Junior told plaintiff that if he did not do the route, he was fired. Plaintiff said he was sorry, but he could not do it. Junior told him to return the next day to sign the termination paperwork.” (Maj. opn. ante, at p. 1034.)
The majority finds these statements by plaintiff may be reasonably understood to constitute “opposition to a practice he believed was unlawful.” (Maj. opn. ante, at p. 1048.) I think it is unreasonable to interpret plaintiff’s complaints as opposition to a practice he believed was unlawful. Plaintiff’s statements are only reasonably understood as a request for a different route, with no hint that he believed he had a lawful right to a different route or that it was discriminatory to refuse to give him a different route.
The majority likens this case to Yanowitz, where the plaintiff did not explicitly state to her superior that she believed his order to terminate a sales associate, because the associate was “ ‘not good looking enough,’ ” constituted unlawful sex discrimination. (Yanowitz, supra, 36 Cal.4th at p. 1044.) But in Yanowitz, the evidence permitted a finding that, in view of the nature of the order, the plaintiff’s “refusal to implement the order, coupled with her multiple requests for ‘adequate justification,’ sufficiently communicated to [her superior] that she believed that his order was discriminatory.” {Id. at p. 1048.) There is no comparable evidence here that plaintiff believed defendant’s scheduling was discriminatory or that he conveyed that belief to defendant. “Standing alone, an employee’s unarticulated belief that an employer is engaging in discrimination will not suffice to establish protected conduct for the purposes of establishing a prima facie case of retaliation, where there is no evidence the employer knew that the employee’s opposition was based upon a reasonable belief that the employer was engaging in discrimination.” {Id. at p. 1046.)
I would affirm the grant of summary judgment for defendant. I would reverse the trial court’s order awarding defendant its costs and remand for a ruling under the standard announced in Williams v. Chino Valley Independent Fire Dist. (2015) 61 Cal.4th 97, 99-100 [186 Cal.Rptr.3d 826, 347 P.3d 976] *1066 (“an unsuccessful FEHA plaintiff should not be ordered to pay the defendant’s fees or costs unless the plaintiff brought or continued litigating the action without an objective basis for believing it had potential merit”).
Respondent’s petition for review by the Supreme Court was denied November 30, 2016, S237652.

 Further statutory references are to the Government Code.

 See also Magnus v. St. Mark United Methodist Church (7th Cir. 2012) 688 F.3d 331, 339 (Magnus) (affirming summary judgment for the defendant employer, rejecting claim the timing of the plaintiffs termination (two weeks after she received a raise, and one day after she arrived late to work because of a medical situation with her disabled daughter) was sufficient to infer associational discrimination; “despite the fact that the [employer] may have placed [the plaintiff] in a difficult situation considering her commendable commitment to care for her disabled daughter [by requiring her to work weekends], she was not entitled to an accommodated schedule”); Den Hartog v. Wasatch Academy (10th Cir. 1997) 129 F.3d 1076, 1077, 1084 (affirming summary judgment for an employer who discharged the plaintiff teacher after his adult son with bipolar affective disorder attacked and threatened several members of the school community; the ADA “does not require an employer to make any ‘reasonable accommodation’ to the disabilities of relatives or associates of an employee who is not himself disabled”); Tyndall v. National Education Centers. Inc. (4th Cir. 1994) 31 F.3d 209, 214 (affirming summary judgment for the employer, who had discharged a disabled employee who was frequently absent from work, due both to her own disability and to the disability of a family member; the ADA “does not require an employer to restructure an employee’s work schedule to enable the employee to care for a relative with a disability”).

 The majority also finds Kouromihelakis v. Hartford Fire Ins. Co. (D.Conn. 2014) 48 F.Supp.3d 175 to be instructive. (Maj. opn. ante, at p. 1044.) I do not, because the facts are so different. In Kouromihelakis. the district court denied the defendant employer’s motion to dismiss the plaintiffs claim he was fired because of the known disability of his father. The plaintiff was a regional sales consultant. His regular work hours were 9:00 a.m. to 6:00 p.m. with lunch from 1:00 to 2:00 p.m., but he was exempt, paid a salary, not an hourly wage. As such, the defendant’s tardiness policy did not apply to him. The plaintiff alleged he was required to assist in the care of his disabled father; his job performance was excellent; he was periodically unable to report for work by 9:00 a.m.; the employer was aware of his father’s disability and the reason for the plaintiff’s tardiness; and the defendant had a “flex time” policy but denied the plaintiff’s requests to change his hours so he could care for his disabled father. One day, the plaintiff was approved to take four hours personal time off, but when he arrived at work at 1:26 p.m., his supervisor considered him late and terminated him for tardiness. (Kouromihelakis. at p. 178.) The com! concluded these allegations were “sufficient to plead a plausible ‘distraction’ claim,” and supported “a reasonable inference that the defendant terminated the plaintiff’s employment based on a belief about future absences.” (Id. at pp. 180-181.) The majority likens Kouromihelakis to this case, saying the evidence here gives rise to the reasonable inference that Junior terminated plaintiff “based on a belief that plaintiff would want earlier shifts in the future.” (Maj. opn. ante, at p. 1044.) But here, plaintiff was an hourly worker whose job required him to report on time for whatever shift and route he was assigned on any given day, there is no evidence here that defendant had a “flex time” policy, and there is no evidence suggesting plaintiff was discharged because Junior feared in the future he would miss work to care for his son.

 Though the Legislature clearly intended to change the law by enacting Assembly Bill No. 987 (2015-2016 Reg. Sess.) to declare a request for accommodation is protected activity, it is not at all clear that the Legislature intended the change to apply to a request by a nondisabled employee to accommodate a disabled relative or associate. With no California or federal authority establishing a duty to accommodate someone who is neither a job applicant nor an employee, I do not presume that is what the Legislature intended. In its letter briefs, defendant provided legislative history of Assembly Bill No. 987 indicating it was intended to protect employees requesting accommodations for their own disabilities. (See, e.g., Legis. Counsel’s Dig., Assem. Bill No. 987 (2015-2016 Reg. Sess.) Stats. 2015, ch. 122 [“This bill would, in addition, prohibit an employer or other covered entity from retaliating or otherwise discriminating against a person for requesting accommodation of his or her disability . . . .” (italics added)]; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 987 (2015-2016 Reg. Sess.) as amended May 27, 2015, p. 1 [“This bill makes it an unlawful employment practice under [FEHA] to retaliate or otherwise discriminate against a person who requests an accommodation . . . for the person’s known physical or mental disability . . . .” (italics added)]; Sen. Judiciary Com., Analysis of Assem. Bill No. 987 (2015-2016 Reg. Sess.) as amended May 27, 2015, p. 1 [“This bill would make it an unlawful employment practice under [FEHA] to retaliate or otherwise discriminate against a person who requests an accommodation . . . for the person’s known physical or mental disability. . . .” (italics added)].)